UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
EMA FINANCIAL, LLC, a Delaware Limited Liability : Case No.: 19-cv-1545
Company, :
 :
              Plaintiff,                          :
     - against -                                  : **COMPLAINT**
                                                  :
VYSTAR CORP., a Georgia Corporation,              :
                                                  :
              Defendant.                          :
                                                  :
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiff, EMA Financial, LLC ("EMA" or "plaintiff"), by its undersigned attorneys, for its complaint, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for specific performance, a permanent injunction, breach of contract, and related relief arising as the result of defendant's conduct in connection with that certain agreement to purchase securities, and a related convertible note. After entering into negotiated, arms-length agreements, for which defendant received valuable consideration, Vystar Corp., ("Vystar") breached the agreement, in numerous ways, including, *inter alia*, by: (i) failing to honor EMA's notices of conversion (each a "Notice of Conversion", collectively "Notices of Conversion); (ii) changing transfer agents without providing irrevocable instructions from the new transfer agent as required by the agreements; and (iii) failing to establish, maintain and increase a share reserve. Accordingly, plaintiff seeks the relief set forth herein.

## PARTIES

2. Plaintiff EMA Financial, LLC ("EMA" or "plaintiff") is a limited liability company duly organized under the laws of the State of Delaware and having a place of business located at 40 Wall Street, New York, New York.

3. The members of EMA reside in New York and Delaware.

4. For purposes of diversity, EMA is a citizen of New York and Delaware.

5. Upon information and belief, defendant Vystar Corp., Inc. ("Vystar") is a corporation organized and existing under the laws of the State of Georgia having its principal place of business located at 101 Aylesbury Road, Worcester, MA 01609.

6. For purposes of diversity, Vystar is a citizen of Georgia.

7. No member of EMA is a citizen of Georgia.

8. There is therefore complete diversity of citizenship.

## JURISDICTION AND VENUE

9. The Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. This Court has supplemental jurisdiction of plaintiff's various state law claims pursuant to 28 U.S.C. Section 1367(a).

11. Venue is proper in this District pursuant to 27 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is subject to this action is situated.

12. Additionally, in the relevant agreement, defendant Vystar consented to jurisdiction and venue in the Southern District of New York.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

13. On or about January 29, 2018, after arm's-length negotiations, Vystar executed a Securities Purchase Agreement (the "SPA") and issued a convertible note to EMA (the "Note") in the amount of $80,000. True and correct copies of the Note and SPA are attached hereto as Exhibit A, and Exhibit B, respectively. On this same date, Vystar issued irrevocable instructions to its transfer agent (the "TA Letter", together with the Note, SPA, and other related transaction documents, the "Agreements") whereby it reserved certain shares to allow for conversions of its stock, as described in further detail below.

14. The Note provides that EMA, has the right to convert all or part of the Note into shares of Vystar common stock (the "Common Stock"). Specifically, §1.1 of the Note provides in pertinent part:

> The Holder shall have the right, in its sole and absolute discretion, as of the date which is 180 days from the Issue Date, to convert all or any part of the outstanding amount due under this Note into fully paid and non-assessable shares of Common Stock.

Ex. A at 1.1.

15. Likewise, 1.4(a) of the Note provides that: "Subject to Section 1.1, this Note may be converted by the Holder in whole or in part as of the date which is 180 days from the Issue Date, by submitting to the Borrower a Notice of Conversion…"

16. As §1.2(a) of the Note dictates: "The conversion price hereunder (the "Conversion Price") shall equal the lower of: (i) the closing sale price of the Common Stock on the Principal Market on the Trading Day immediately preceding the Closing Date, and (ii) 65% of the average of the two (2) lowest bid prices for the Common Stock of the Principal Market during the twenty

3

(20) consecutive Trading Days including and immediately preceding the Conversion Date, or the closing bid price, whichever is lower…"

17. Further, under §1.4(d) of the Note: "Upon receipt by the Borrower from the Holder of a facsimile transmission or e-mail (or other reasonable means of communication) of a Notice of Conversion meeting the requirements for conversion as provided in this Section 1.4 or upon an event triggering the calculation of an Adjusted Conversion Price, the Borrower shall issue and deliver or cause to be issued and delivered to or upon the order of the Holder certificates for the Common Stock issuable upon such conversion within three (3) business days after such receipt or such an event (the "Deadline")…"

18. In order to ensure that sufficient shares are available for conversion, §1.3 of the Note provides that:

> The Borrower covenants that the Borrower will at all times while this Note is outstanding reserve from its authorized and unissued Common Stock a sufficient number of shares, free from preemptive rights, to provide for the issuance of Common Stock upon the full conversion of this Note. The Borrower is required at all times to have authorized and reserved five (5) times the number of shares that is actually issuable upon full conversion of this Note (based on the Conversion Price of the Notes in effect from time to time)(the "Reserved Amount"). Initially, the Company will instruct the Transfer Agent to reserve thirty million eight hundred thousand (30,800,000) shares of common stock in the name of the Holder for issuance upon conversion hereof. The Borrower represents that upon issuance, such shares will be duly and validly issued, fully paid and non-assessable.

19. In order to ensure that EMA at all times has shares reserved in connection with the outstanding Note, §5 of the SPA states that:

> In the event that the Company proposes to replace its transfer agent, the Company shall provide, prior to the effective date of such replacement a fully executed Irrevocable Transfer Agent Instructions in a form as initially delivered pursuant to this Agreement and the Securities (including but not limited to the provision to irrevocably reserve shares of Common Stock in the Reserved Amount (as defined in the Note) signed by the successor transfer agent to Company and the Company.

20. Page 1 of the Note provides that Vystar must repay the unpaid interest and principal balance of the Note on January 29, 2019, the maturity date of the Note, which may be extended by EMA until January 29, 2020. On or about December 20, 2019, EMA exercised its option to extend the maturity date of the Note until January 29, 2020.

21. Section 1.8 of the Note provides that Vystar can prepay the Note during the period beginning on the Issue Date of the Note, and ending six months following the Issue Date of the Note. Vystar is not permitted to prepay the Note after that period has elapsed.

## **VYSTAR BREACHES THE AGREEMENTS**

22. On September 18, 2018, Vystar breached the Agreements by failing to maintain adequate reserves of its stock with its transfer agent and by failing to honor EMA's request that the share reserve be increased.

23. On or about October 23, 2018, Vystar switched transfer agents without notice to EMA, did not re-establish the share reserve with the new transfer agent, and did not execute Irrevocable Transfer Agent Instructions with the new transfer agent in the same form and substance as required under the Agreements, in violation of Sections 3.2, 3.3, 3.4 of the Note and Section 5 of the SPA.

24. On or about January 15, 2019, EMA submitted a Notice of Conversion, seeking to convert a portion of the Note into 20,545,511 shares of Vystar's common stock in accordance with Sections 1.1 and 1.2(a) of the Note.

25. Vystar failed to honor the January 15, 2019 Notice of Conversion, in breach of the Agreements.


26. Likewise, on February 5, 2019, EMA submitted a second Notice of Conversion, seeking to convert a portion of the Note into 6,202,508 shares of Vystar's common stock in accordance with Sections 1.1 and 1.2(a) of the Note.

27. Vystar failed to honor the February 5, 2019 Notice of Conversion, in breach of the Agreements.

28. Among other things, Vystar claimed it was not going to honor EMA's Notices of Conversion because doing so would provide EMA with "too great a profit."

29. Accordingly, EMA is entitled to enforce each of its rights under the Note and SPA.

30. Section 3.2 of the Note provides for a breach in the event that:

> The Borrower fails to issue shares of Common Stock to the Holder (or announces or threatens in writing that it will not honor its obligation to do so at any time following the execution hereof or) upon exercise by the Holder of the conversion rights of the Holder in accordance with the terms of this Note, fails to transfer or cause its transfer agent to transfer (issue) (electronically or in certificated form) any certificate for shares of Common Stock issued to the Holder upon conversion of or otherwise pursuant to this Note as and when required by this Note, the Borrower directs its transfer agent not to transfer or delays, impairs, and/or hinders its transfer agent in transferring (or issuing) (electronically or in certificated form) any certificate for shares of Common Stock to be issued to the Holder upon conversion of or otherwise pursuant to this Note as and when required by this Note, or fails to remove (or directs its transfer agent not to remove or impairs, delays, and/or hinders its transfer agent from removing) any restrictive legend (or to withdraw any stop transfer instructions in respect thereof) on any certificate for any shares of Common Stock issued to the Holder upon conversion of or otherwise pursuant to this Note as and when required by this Note (or makes any written announcement, statement or threat that it does not intend to honor the obligations described in this paragraph)… It is an obligation of the Borrower to remain current in its obligations to its transfer agent. It shall be an event of default of this Note, if a conversion of this Note is delayed, hindered or frustrated due to a balance owed by the Borrower to its transfer agent…

31. Likewise, Section 5 of the SPA provides that:

> Upon receipt of a duly executed Notice of Conversion, the Company shall issue irrevocable instructions to its transfer agent to issue certificates, registered in the name of the Purchaser or its nominee, for the Conversion Shares in such

amounts as specified from time to time by the Purchaser to the Company upon conversion of the Note, or any part thereof, in accordance with the terms thereof (the "Irrevocable Transfer Agent Instructions"). In the event that the Company proposes to replace its transfer agent, the Company shall provide, prior to the effective date of such replacement, a fully executed irrevocable Transfer Agent Instructions in a form as initially delivered pursuant to this Agreement and the Securities (including but not limited to the provision to irrevocably reserve shares of Common Stock in the Reserved Amount (as defined in the Note)) signed by the successor transfer agent to Company and the Company.

32. Similarly, 3.15 of the Note provides that:

In the event that the Borrower proposes to replace its transfer agent, the Borrower fails to provide, prior to the effective date of such replacement, a fully executed Irrevocable Transfer Agent Instructions in a form as initially delivered pursuant to the Purchase Agreement (including but not limited to the provision to irrevocably reserve shares of Common Stock in the Reserved Amount) signed by the successor transfer agent to Borrower and the Borrower.

33. Based on the foregoing events, Vystar's failure to honor EMA's Notices of Conversion and other actions and omissions has given rise to one or more "Event of Default" pursuant to the terms the Note. In addition thereto, Vystar's conduct has caused multiple "Events of Default" to occur.

34. Section 8 of the Note outlines the negotiated-for and agreed-upon remedies for the differing Events of Default. Among other things, EMA is permitted to enforce any and all of plaintiff's rights under the Note and SPA, or otherwise as permitted by law.

35. Page 1 of the Note provides that: "Any amount of principal or interest on this Note which is not paid when due shall bear interest at the rate of twenty-four (24%) per annum from the due date thereof until the same is paid ("Default Interest")."

36. Due to Vystar's persistent and willful failure to remedy its various breaches, default interest has been accruing at a rate of 24%.

37. Section 3.16 of the Note provides that, in the event of default, "all other amounts payable hereunder shall immediately become due and payable, all without demand, presentment or notice, all of which hereby are expressly waived, together with all costs, including, without limitation, legal fees and expenses of collection, and the Holder shall be entitled to exercise all other rights and remedies available at law or in equity."

38. EMA has been, and continues to be, irreparably harmed by Vystar's failure to honor the Notices of Conversion, and failure to maintain a reserve.

39. Damages from Vystar's failure to deliver the shares are inherently uncertain and difficult to calculate.  Since the parties entered in the Note on January 29, 2018, Vystar's Stock price has ranged from a low of $0.0005 on December 24, 2018 to a high of $0.158 on February 12, 2019.

40. Thus, the timing of conversions and sale of stock would be essential to the determination of damages.  Because it is difficult to discern with any accuracy precisely when EMA would have sold the converted shares, and how many it would sell had the conversions been honored, calculating its losses is impossible.

41. Additionally, Vystar's most recent Form 10Q filed with the United States Securities and Exchange Commission demonstrates that Vystar is legally insolvent, leaving plaintiff's ability to collect any potential judgment in substantial doubt.

42. All notices and prerequisites to bringing this action, if any, have been complied with or were waived.

**FIRST CLAIM FOR RELIEF**
**(SPECIFIC PERFORMANCE)**

43. EMA realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as fully set forth herein.

44. Pursuant to the Agreements, Vystar is obligated to deliver shares of Vystar's Common Stock pursuant to the Conversion Notices submitted, as well as to provide the transfer agent the necessary board resolutions sufficient to enable EMA to sell the shares publicly without restriction.

45. Despite its obligation to do so, Vystar has refused and failed to deliver said shares of stock to EMA.

46. Vystar has further failed to establish and increase the share reserve, and to execute a new TA Letter with the new transfer agent in the required form, as required by the various agreements between the parties.

47. As a result of such failure and refusal by Vystar, EMA has suffered damages.

48. EMA has no adequate remedy at law.

49. In the absence of injunctive relief and specific performance, EMA will suffer irreparable harm.

50. EMA requests, therefore, that the Court enter an order requiring Vystar to specifically perform the relevant agreements, including the SPA, Note, and TA letter, and to deliver immediately to EMA the shares of its Common Stock pursuant to each Notice of Conversion submitted, and to establish and increase the share reserve, as well as to provide EMA with the necessary resolutions, and to take whatever steps necessary (as per the terms of the Agreements), sufficient to enable EMA to sell the shares publicly without restriction.

**SECOND CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

51. EMA realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as fully set forth herein.

52. The Note and SPA, are valid and binding agreements.

53. As set forth more fully above, Vystar breached the agreements. Vystar's numerous breaches of the Agreements include, but are not limited to:

(i) failing to honor the Notices of Conversion submitted; and

(ii) switching transfer agents without notice to EMA,

(iii) failing to re-establish the share reserve with the new transfer agent,

(iv) failing to execute Irrevocable Transfer Agent Instructions with the new transfer agent in the same form and substance as required under the Agreements; and

(v) failing to establish the share reserve; and

(vi) its failure to honor the terms, conditions, representations and warranties of the SPA and Note;

54. Vystar's conduct constitutes breaches of, and defaults under, the terms of the Agreements.

55. EMA has performed all obligations of the relevant agreements that were its obligation to perform except for those obligations that it could not perform because of defendant's breaches herein.

56. Vystar's breaches and defaults are governed by Delaware law under the terms of the Note.

57. EMA is therefore entitled to an award of damages in an amount to be determined at trial but in any event in excess of the sum $$4,226,187., including without limitation the

balance of any portion of the Note that ultimately is not converted into shares, along with default interest, liquidated damages, and damages as provided for in the Note and by law.

### THIRD CLAIM FOR RELIEF
### (PERMANENT INJUNCTION)

58. EMA realleges and incorporates by reference each and every allegation contained in each preceding paragraph of this Complaint as fully set forth herein.

59. §4.10 of the Note provides:

Borrower acknowledges that the remedy at law for a breach of its obligations under this Note will be inadequate and agrees, in the event of a breach or threatened breach by the Borrower of the provisions of this Note, that the Holder shall be entitled, in addition to all other available remedies at law or in equity, and in addition to the penalties assessable herein, to an injunction or injunctions restraining, preventing or curing any breach of this Note and to enforce specifically the terms and provisions thereof, without the necessity of showing economic loss and without any bond or other security being required.

60. Pursuant to its obligations under the relevant agreements, Vystar is obligated to deliver shares of its Common Stock, along with the necessary resolutions and acceptance of the legal opinions furnished by EMA, sufficient to enable EMA to sell the shares publicly without restriction.

61. Despite its obligation to do so, Vystar has failed and refused to deliver said shares of stock to EMA as required..

62. As a result of such refusal by Vystar, EMA has suffered damages.

63. EMA has no adequate remedy at law.

64. In the absence of injunctive relief, EMA will suffer irreparable harm.

65. Additionally, Vystar consented to an injunction when entering into the Note and SPA.

66. EMA requests, therefore, that the Court enter an order enjoining and requiring Vystar to deliver the shares of stock as called for in the relevant agreements in response to each Notice of Conversion and request for shares that were sent and to honor any future conversion notices.

## FOURTH CLAIM FOR RELIEF
### (COSTS, EXPENSES & ATTORNEYS FEES)

67. EMA realleges and incorporates by reference each and every allegation contained in each preceding paragraph of this Complaint as fully set forth herein.

68. In accordance with the agreements between the parties, Vystar agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, incurred by EMA in collecting any amount under the Agreements.

69. Section 4.5 of the Note states, "If default is made in the payment of this Note, the Borrower shall pay the Holder hereof costs of collection, including reasonable attorneys' fees."

70. Therefore, EMA is entitled to an award against Vystar for costs and expenses incurred in the prosecution of this lawsuit, including reasonable legal fees.

## CLAIM FOR RELIEF

**WHEREFORE**, plaintiff EMA seeks judgment against defendant Vystar as follows:

i. On the First Claim for Relief, EMA requests that the Court enter an Order requiring Vystar to specifically perform the relevant Agreements, including the SPA, Note, and TA Letter, and to deliver immediately shares of its Common Stock pursuant to each Notice of Conversion and provide the necessary resolutions, and accept the legal opinions furnished by EMA, sufficient to enable EMA to sell the shares publicly without restriction, and to establish and increase its shares reserve.

ii. On all Second Claim for Relief, for damages in an amount to be determined, but in any event in excess of $$4,226,187;

iii. On the Third Claim for Relief, the issuance of an injunction enjoining and requiring Vystar to deliver the shares of stock as called for in the relevant agreements in response to the Notices of Conversion that were sent;

iv. On the Fourth Claim for Relief for an award of EMA's costs and expenses in prosecuting this action, including reasonable legal fees;

v. On all Claims for Relief, for interest, attorneys' fees and the costs and disbursements of this action; and

vi. For such other further relief as the Court may deem just, proper, and in the interest of justice.

Dated: February 19, 2019
       New York, New York

                LAW OFFICE OF JEFFREY FLEISCHMANN PC
                By: /s/Jeffrey Fleischmann
                Jeffrey Fleischmann, Esq.

*Attorneys for Plaintiff EMA Financial, LLC*

150 Broadway, Suite 900
New York, N.Y. 10038
Tel. (646) 657-9623
Fax (646) 351-0694
jf@lawjf.com