USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/13/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMA FINANCIAL, LLC,<br><br>                               Plaintiff,<br><br>                -against-<br><br>VYSTAR CORP.,<br><br>                               Defendant. | 1:19-cv-01545 (ALC)<br><br>OPINION AND ORDER |

**ANDREW L. CARTER, JR., United States District Judge:**

## INTRODUCTION

Plaintiff EMA Financial, LLC, ("Plaintiff") brings suit against Defendant Vystar Corp. ("Defendant"), alleging claims of breach of contract (Count II). *See* Compl., ECF No.1. In addition, Plaintiff seeks specific performance (Count I), a permanent injunction (Count III), and attorneys' fees (Count II). *Id.* at ¶¶ 43-50, 58-70. Presently before the Court is Defendant's motion to dismiss Plaintiff's claims for specific performance and a permanent injunction pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**. Accordingly, Plaintiff's motion for summary judgment is **DENIED** as moot.

## BACKGROUND

### I. The Agreements

On January 29, 2018, Defendant executed a Securities Purchase Agreement (the "SPA") and issued a Convertible Note ("Note") to Plaintiff valued at $80,000. Compl. ¶ 13., *see also* Pl.'s Ex. A; Pl.'s Ex. B. Pursuant to the SPA, Plaintiff could exercise conversion rights by submitting a Notice of Conversion to Defendant. Pl.'s Ex A at § 1.4(a). Upon receipt of such a notice, within three business days, Defendant was then required to issue shares to Plaintiff by

1

issuing irrevocable instructions to its transfer agent. *Id.* § 1.4; Pl.'s Ex. B § 5. The Note provides the conversion price would be

> equal [to] the lower of: (i) the closing sale price of the Common Stock on the Principal Market on the Trading Day immediately preceding the Closing Date, and (ii) 65% of the average of the two (2) lowest bid prices from the Common Stock of the Principal Market during the twenty (20) consecutive Trading Days including and immediately preceding the Conversion Date, or the closing bid price, whichever is lower . . .

Pl.'s Ex. A at § 1.2(a). The Note further states Defendant's failure to issue shares upon receipt of a Notice of Conversion would result in default. *Id.* § 3.2.

To ensure the availability of shares for conversion, the Note provides that the Defendant would

> at all times while this Note is outstanding reserve from its authorized and unissued Common Stock a sufficient number of shares, free from preemptive rights, to provide for the issuance of Common Stock upon the full conversion of this Note. The [Defendant] is required at all times to have authorized and reserved five (5) times the number of shares that is actually issuable upon full conversion of this Note (based on the Conversion Price of the Notes in effect from time to time)(the "Reserved Amount").

*Id.* § 1.3. Additionally, the SPA provides that should the Defendant wish to change its transfer agent, the Defendant shall "execute irrevocable Transfer Agent Instructions in a form as initially delivered pursuant to this Agreement and the Securities . . .signed by the successor transfer agent to [Plaintiff] and [Plaintiff]." Pl.'s Ex. B § 5.

In terms of payment, Defendant was required to repay the unpaid interest and principal balance of the Note by its maturity date. Pl.'s Ex. A § 1. The maturity date was initially January 29, 2019; however, Plaintiff extended it until January 29, 2020. Compl. ¶ 20. In the event Defendant failed to pay "[a]ny amount of principal or interest on this Note" such principal or interest will "bear interest at the rate of twenty-four (24%) per annum from the due date thereof until the same is paid." Pl.'s Ex. A at 1.

2

> Lastly, in the event of default, the Note states the Defendant acknowledges that the remedy at law for a breach of its obligations under this Note will be inadequate and agrees, in the event of a breach or . . . the Holder shall be entitled, in addition to all other available remedies at law or in equity, and in addition to the penalties assessable herein, to an injunction or injunctions restraining, preventing or curing any breach of this Note and to enforce specifically the terms and provisions thereof, without the necessity of showing economic loss and without any bond or other security being required.

*Id.* §4.10. In other words, the Note identified equitable relief, specifically injunctions and specific performance, as remedies for breaches that resulted in default.

## II. The Alleged Breaches

On September 18, 2018, Defendant failed to maintain adequate reserves shares with its transfer agent. Compl. ¶ 22. One month later, on October 23, 2018, Defendant changed its transfer agent without providing notice to Plaintiff. *Id.* ¶ 23. Defendant further failed to re-establish the share reserve with the new transfer agent and did not execute Irrevocable Agent Instructions. *Id.* On January 15, 2019, Plaintiff submitted a Notice of Conversion, which sought to convert some of the Note into 20,545,511 shares of Defendant's common stock. *Id.* ¶ 24. Defendant, however, did not issue such shares. *Id.* ¶ 25. Plaintiff then issued a second Notice of Conversion on February 5, 2019, requesting to convert some of the Note into 6,2020,508 shares of Defendant's common stock. *Id.* ¶ 26. Again, Defendant did not issue such stocks. *Id.* ¶ 28. Since the execution of the Note, Defendant's stock price has ranged from a low of $0.0005 on December 24, 2018 to a high of $0.158 on February 12, 2019. *Id.* ¶ 39.

## LEGAL STANDARD

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks

omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* 663.

## DISCUSSION[1]

### I. Specific Performance

Under "Delaware law . . . a plaintiff [must] demonstrate its entitlement to specific performance by clear and convincing evidence. *In re IBP, Inc. Shareholders Litig.*, 789 A.2d 14, 52 (Del. Ch. 2001); *see also A.W. Fin. Servs., S.A. v. Empire Res., Inc.*, No. 07 CIV. 8491 SHS, 2010 WL 3825726, at *10 (S.D.N.Y. Sept. 30, 2010). Specifically, a Plaintiff must show: (1) there is "a valid contract between the parties;" (2) the Plaintiff "has substantially performed under the contract and is willing and able to perform its remaining obligations;" (3) the Defendant "is able to perform its obligations;" (4) and the Plaintiff "has no adequate remedy at law." *In re IBP, Inc. Shareholders Litig.*, 789 A.2d at 52.

---

[1] The Parties agree that Delaware law controls.

Here, Defendant primarily argues Plaintiff has failed to satisfy elements two and four. In particular, Defendant argues Plaintiff's allegations concerning substantial performance are conclusory and the existence of damages provide an adequate remedy at law. Defendant further asserts that because Plaintiff's claim for specific performance is duplicative of its breach of contract claim, Plaintiff is not entitled to specific performance.

Because Plaintiff has failed to sufficiently allege substantial performance, Plaintiff's first cause of action must be dismissed. In its Complaint, Plaintiff alleges "EMA has performed all obligations of the relevant agreements that were its obligation to perform except for those obligations that it could not perform because of defendant's breaches herein." *See e.g.*, Compl. ¶ 55. Such allegations are conclusory and do not provide the Court with the necessary factual allegations concerning how and when Plaintiff performed its relevant obligations. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). For this reason, Defendant's motion to dismiss as to this claim is **GRANTED**.[2]

II.    **Permanent Injunction**

To obtain a permanent injunction, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Deferio v. City of Syracuse*, 770 F. App'x 587, 591 (2d Cir. 2019) (quoting *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006)) ("To obtain a permanent injunction, a

---

[2] Although the Court does not reach the fourth element, the factors discussed in the following section on Plaintiff's third cause of action are substantially similar. However, Delaware law, as opposed to the law in this Circuit would apply to this analysis.

plaintiff must 'succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted.'" ). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court. . . ." *Id.* (citation omitted); see also *E.E.O.C. v. KarenKim, Inc.*, 698 F.3d 92, 100 (2d Cir. 2012).

In this case, Defendant argues that Plaintiff's claim for a permanent injunction should be dismissed because Plaintiff's allegations concerning irreparable harm, specifically those related to insolvency and the difficulty of calculating damages, are conclusory. Defendant further asserts Plaintiff's equitable claims are duplicative of its breach of contract claim. In response, Plaintiff argues it has sufficiently alleged Defendant is insolvent and that damages would be difficult to ascertain. Since its permanent injunction claims partially seek prospective relief, Plaintiff also argues this claim is not duplicative of its breach of contract claims. Accordingly, the Court will focus its inquiry on whether the first and second factors are satisfied.

"Irreparable harm is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." *Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 828 (S.D.N.Y. 2011) (quoting *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir.1995)); see also *CRP/Extell Parcel I*, 394 F. App'x at 781 (citation omitted) ("We have long held that an injury compensable by money damages is insufficient to establish irreparable harm."). Where, as here, an equitable remedy stipulation exists, courts in this Circuit "treat such a provision as *persuasive* evidence that [Plaintiff] will suffer from irreparable harm absent an injunction, rather than dispositive evidence." *EMA Fin., LLC v. AIM Expl., Inc.*, No. 18 CIV. 145, 2019 WL 689237, at *12–13 (S.D.N.Y. Feb. 19, 2019) (citing *Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp.*, No. 02 Civ. 10237, 2003 WL 328302, at *5 (S.D.N.Y. Feb. 11,

2003)); *see also Alpha Capital Anstalt v. Shiftpixy, Inc.*, No. 19 CIV. 6199, 2020 WL 104697, at *10 (S.D.N.Y. Jan. 9, 2020). The Court therefore must consider factors beyond the stipulation to determine whether Plaintiff has satisfied the first factor.

Generally, where the non-breaching party seeks to enforce a conversion notice, equitable relief will not be provided where the stocks are available on the open market. In fact, as a court in this District involving Plaintiff in a similar action stated, where a "[plaintiff] has not alleged that such shares are unavailable on the open market, and the value of such shares on a given date will likely be undisputed . . . courts in this District are generally loath to award injunctive relief." *EMA Fin., LLC v. AIM Expl., Inc.*, 2019 WL 689237, at *13 (citations omitted); *see also Alpha Capital Anstalt*, 2020 WL 104697, at *10. However, one exception to this general rule is "where the claim involves an obligation owed by an insolvent or a party on the brink of insolvency." *Alpha Capital Anstalt*, 2020 WL 104697, at *11 (quoting *CRP/Extell Parcel I*, 394 F. App'x at 781; *see also Union Capital LLC v. 5BARZ Int'l Inc.*, No. 16-CV-6203, 2016 WL 8794475, at *2 (S.D.N.Y. Oct. 5, 2016) (finding the irreparable harm element satisfied where Defendant's insolvency was admitted). "Predicate to injunctive relief under this exception, a movant must show that the risk of insolvency is likely and imminent." *CRP/Extell Parcel I, L.P.*, 394 Fed. App'x. at 781.

Here, Plaintiffs have not argued that the stock in question was unique; in fact, Plaintiff alleges the stocks are publicly traded. *See* Compl. ¶ 39. As a result, the value of the shares on or near the dates of the alleged breaches is determinable. Further, the fact that the shares fluctuate widely is not dispositive. *See CRP/Extell Parcel I*, 394 F. App'x at 781 ("[W]e have not held that a mere "difficulty" in calculating damages is sufficient to establish irreparable harm."). Plaintiff additionally has not plausibly alleged that Defendant is insolvent or is imminently at risk of

becoming insolvent. In fact, its allegations on this point are conclusory and fail to include specific factual allegations demonstrating insolvency. *See* Compl. ¶ 41. ("Vystar's most recent Form 10Q filed with the United States Securities and Exchange Commission demonstrates that Vystar is legally insolvent, leaving plaintiff's ability to collect any potential judgment in substantial doubt."). Because Defendant's shares are available on the open market and Plaintiff has failed to allege Defendant's insolvency, the Court finds, despite the existence of a stipulation, Plaintiff has not sufficiently alleged it is entitled to a permanent injunction.

However, even if Plaintiff had specified how the Form 10Q demonstrates Defendant's insolvency, Plaintiff would not meet the insolvency exception based on this document alone. The 10Q states the Defendant "will need to significantly reorient its operations during 2018, which could have a material adverse effect on the company's ability to achieve its business objectives and as a result may require the Company to file for bankruptcy or cease operations." Pl.'s Ex. 6 at 14. Although the 10Q form indicates that as of September 30, 2018, Defendant's total liabilities ($3,948,501) outweigh its total assets ($3,407,519), the 10Q Form also states the majority of shareholders have approved a plan authorizing "a raise in capital for up to $2 million in convertible notes." *Id.* at 20. Additionally, Defendant has entered into consulting agreements with two different companies. *Id.* If successful, the execution of the plan, plus any expenses saved or revenue generated through engaging consultants, would cover Defendant's approximate $540,000 deficit. *See Union Capital LLC v. Vape Holdings Inc.*, No. 16-CV-1343, 2016 WL 8813991, at *4 (S.D.N.Y. Mar. 9, 2016) (concluding Plaintiff had failed to show Defendant's insolvency sufficient to support issuing a preliminary injunction where there was evidence of "newly launched products," "'adjustments' to [Defendant's] manufacturing costs" and "continued interest from investors"); *cf. Castle Creek Tech. Partners, LLC v. CellPoint Inc.*, No.

02 CIV. 6662, 2002 WL 31958696, at *4 (S.D.N.Y. Dec. 9, 2002) (finding Defendant was insolvent or on the brink of insolvency in an application for a preliminary injunction where the Defendant had "a capital deficiency of approximately $11 million" and "the projected income [from new business ventures was] nowhere near sufficient to address the capital deficit or even to cover the company's expenses"); *see also Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc.*, 149 F. Supp. 3d 376, 390-97 (E.D.N.Y. 2016) (determining " although some of the Plaintiff's claims sound in equity, those claims are entirely duplicative of the Plaintiff's breach of contract claims" and therefore a preliminary injunction based on the insolvency exception was not applicable). Accordingly, without additional information concerning the Defendant's financial state, the Court cannot conclude the Form 10Q demonstrates Defendant's insolvency or the imminence of its insolvency.

## CONCLUSION

For the forgoing reasons, the Defendant's motion to dismiss the first and third causes of action is **GRANTED** and Plaintiff's motion for summary judgment is **DENIED** as moot.

**SO ORDERED.**
**Dated: March 13, 2020**
   **New York, New York**

ANDREW L. CARTER, JR.
United States District Judge