UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

EMA FINANCIAL, LLC,                                    :

                  Plaintiff,               :

     -v.-                                                      :

VYSTAR CORP.,                                             :

              Defendant.                 :

-----------------------------------------------------------------X

        <u>OPINION AND ORDER</u>
        19 Civ. 1545 (ALC) (GWG)

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

    Ema Financial, LLC ("Ema") brought this case against Vystar Corp. ("Vystar") alleging breach of contract and other claims related to a securities purchase agreement and a convertible note.   In its answer, Vystar asserted a number of counterclaims.   Ema has moved for summary judgment pursuant to Fed. R. Civ. P. 56 and has moved to dismiss Vystar's counterclaims pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).   In this motion, Ema seeks a stay of discovery pending resolution of those motions.[1]   For the reasons set forth below, Ema's motion for a stay is granted.

I.  <u>BACKGROUND</u>

    A.  <u>Facts Pertaining to Liability</u>

    Because Ema is seeking a stay of discovery pending the disposition of its motions to dismiss Vystar's counterclaims and for summary judgment, the allegations in Vystar's

---

[1]  Motion to Stay Discovery, filed June 11, 2020 (Docket # 81); Memorandum of Law in Support of Motion to Stay Discovery, filed June 11, 2020 (Docket # 82) ("Pl. Mem."); Declaration of Barry M. Bordetsky in Opposition to Motion to Stay Discovery, filed July 2, 2020 (Docket # 87); Memorandum of Law in Opposition to Motion to Stay Discovery, filed July 2, 2020 (Docket # 88) ("Def. Mem."); Reply Memorandum of Law in Support of Motion to Stay Discovery, filed July 10, 2020 (Docket # 99) ("Reply").

counterclaims as set forth in the Amended Answer, filed April 16, 2020 (Docket # 60) ("AA"),
along with Vystar's evidence as raised in opposition to the motion for summary judgment, will
be presumed to be true.   See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)
(summary judgment standard); Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000)
(motion to dismiss standard).

Vystar, a public company, is the creator of a latex product.   AA ¶¶ 81, 83.   Around
January 2018, Vystar was seeking financing and was introduced to Ema.   Id. ¶ 84.   Ema is not a
registered broker-dealer under the Securities and Exchange Act of 1934, 15 U.S.C. § 78o(a)(1)
("Exchange Act").   See id. ¶¶ 155, 181.   The parties subsequently entered into two agreements:
(1) a convertible note ("Note") which provided for a $80,000 loan from Ema to Vystar with
interest on the unpaid principal at the rate of 12% per year, id. ¶ 98; and (2) a securities purchase
agreement ("SPA") which provided for Ema's purchase of the Note and allowed it to convert the
loan into shares of Vystar via an irrevocable instruction to a transfer agent, id. ¶ 101.   The Note
"entitled [Ema] to receive issuer stock at a substantial discount from the prevailing market
price."   Id. ¶ 168.   On March 8, 2018, Ema loaned Vystar $72,300.   Id. ¶ 110.   To execute the
conversion of shares, Ema only needed to provide a notice of conversion which triggered the
transfer agent to send Ema the requisite shares.   See id. ¶ 112.

Between September 11, 2018 and January 9, 2019, Ema effectuated nine conversions.
Id. ¶ 118.   "EMA generally sold the stock immediately after conversion," id. ¶ 170, which
typically resulted in a profit, id. ¶ 174.   According to Vystar, Ema failed to properly calculate
interest and thus Vystar fully complied with its contractual obligations by the end of 2018 and
Ema's two January 2019 conversions were in excess of the amount it was due.   Id. ¶¶ 132-34.

Ema sent a notice of conversion on January 15, 2019, and Vystar subsequently reviewed the transactions and created its own analysis of the balance due.   Id. ¶¶ 136, 138.   Vystar then realized it had fully satisfied its obligations.   Id. ¶ 139.   Because, under the SPA, Ema's notice of conversion automatically caused the transfer agent to send Ema the requested shares, Vystar changed transfer agents to short-circuit the conversion process.   See id. ¶¶ 139-40.   The parties disputed whether there was any remaining principal balance and, while contesting Ema's claims, Vystar transferred $4,658 plus the wire fee to Ema on January 30, 2019.   Id. ¶¶ 141-42.   Ema sent an additional conversion notice on February 5, 2019, but it was not effectuated.   Id. ¶ 144.

    B.   Procedural History

Ema filed its complaint on February 19, 2019, asserting four claims for relief: specific performance; breach of contract; permanent injunction; and costs, expenses, and attorneys' fees (Docket # 1).   Ema also filed a proposed order to show cause (Docket # 5) and requested a preliminary injunction, or, in the alternative, partial summary judgment (Docket # 9). Following a hearing before Judge Carter, Ema's request for a preliminary injunction was denied (Docket # 30).   Vystar was permitted to oppose Ema's partial summary judgment and file a motion to dismiss.   Id.   Vystar filed a motion to dismiss the specific performance and permanent injunction claims and opposed Ema's motion for partial summary judgment (Docket ## 31, 33).   On March 13, 2020, Judge Carter granted Vystar's motion to dismiss as to these claims and denied Ema's motion for partial summary judgment as moot (Docket # 49).

Vystar filed an amended answer on April 16, 2020, asserting affirmative defenses and interposing six counterclaims: misrepresentation and manipulation; declaratory judgment for violating 15 U.S.C. § 78o(A)(1); declaratory judgment asserting the Note and SPA are

unconscionable and unenforceable; unjust enrichment; breach of contract; and a claim for attorneys' fees.   See AA ¶¶ 184-241.   One of the defenses asserted that Ema's claims are barred because Ema violated the Exchange Act by acting as an unregistered broker-dealer.   Id. ¶ 71. And the basis for at least one of the counterclaims — the one seeking a declaratory judgment that EMA violated 15 U.S.C. § 78o(A)(1) — centers on the allegation that Ema was acting as an unregistered broker-dealer.   See ¶¶ 204-209.

Ema obtained permission to file a motion to dismiss Vystar's counterclaims and a motion for summary judgment (Docket ## 66, 69).   At about the same time, Ema also filed motions to quash subpoenas (Docket # 65) and to stay discovery (Docket # 71), which were the subject of a conference on May 28, 2020.   See Order, filed May 28, 2020 (Docket # 74); see also Transcript of Proceedings, filed June 11, 2020 (Docket # 82-1) ("Conf. Transcript").   During the conference, the parties addressed three categories of discovery sought by Vystar: (1) discovery regarding three topics concerning the breach-of-contract claim: namely, the principle amount of the loan at issue, as reflected on the face of the note; the interest calculation; and whether the legal fees were paid, see Conf. Transcript at 6-8; (2) discovery regarding the broker-dealer affirmative defense and counterclaim, see id. at 12-13; and (3) discovery regarding the manipulation counterclaim, id. at 13.   As to the final category, Vystar ultimately acknowledged that, in light of the automatic stay of discovery contained in the Private Securities Litigation Reform Act ("PSLRA"), it would not be entitled to discovery on this counterclaim once Ema filed a motion to dismiss it.   See id. at 14, 16.   The Court permitted discovery as to the first category, temporarily stayed all third-party discovery and discovery on the broker-dealer issue, and allowed Ema to file the instant motion to stay discovery on the broker-dealer issue.   See id.

4

at 18-20.

Ema filed its motions to dismiss and for summary judgment on June 10, 2020 (Docket # 75) and filed the instant motion to stay discovery the following day (Docket # 81).   Briefing on the motions to dismiss and for summary judgment has since completed (see Docket # 103).   Ema's motion for summary judgment includes a request to strike Vystar's affirmative defense raising the broker-dealer issue (Docket # 77 at 26).

## II.   LAW GOVERNING MOTIONS TO STAY DISCOVERY

"A motion to dismiss does not automatically stay discovery, except in cases covered by the Private Securities Litigation Reform Act."   Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd., 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (citation omitted).   Thus, "discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed."   Id. (quoting Moran v. Flaherty, 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992)).   However, "upon a showing of good cause a district court has considerable discretion to stay discovery" pursuant to Fed. R. Civ. P. 26(c).   Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc., 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009); accord Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc., 2009 WL 274483, at *1 (S.D.N.Y. Feb. 3, 2009).   Fed. R. Civ. P. 26(d) also allows the Court to control the sequence and timing of discovery, particularly where resolution of a preliminary matter may decide the entire case.   Thrower v. Pozzi, 2002 WL 91612, at *7 (S.D.N.Y. Jan. 24, 2002) (citing Association Fe Y Allegria v. Republic of Ecuador, 1999 WL 147716, at *1 (S.D.N.Y. Mar. 16, 1999)).

"[A] court determining whether to grant a stay of discovery pending a motion must look to the particular circumstances and posture of each case."   Alford v. City of N.Y., 2012 WL

5

947498, at *1 (E.D.N.Y. Mar. 20, 2012) (citation omitted).   Courts consider: "(1) the breadth of discovery sought, (2) any prejudice that would result, and (3) the strength of the motion."   Hong Leong Fin. Ltd. (Singapore), 297 F.R.D. at 72 (internal quotation marks, alteration, and citation omitted); accord Integrated Sys. & Power, Inc., 2009 WL 2777076, at *1.   The moving party bears the burden of demonstrating good cause under Fed. R. Civ. P. 26(c).   See Thrower, 2002 WL 91612, at *7.

As we have previously determined in another case with respect to the "strength of the motion" prong of this analysis, the party seeking a stay must present "substantial arguments for dismissal[]."   Hong Leong Fin. Ltd. (Singapore), 297 F.R.D. at 72 (quoting Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd., 206 F.R.D. 367, 368 (S.D.N.Y. 2002)) (additional citation omitted).   Phrased otherwise, this standard requires "a strong showing that the [opposing party's] claim is unmeritorious."   Id. (quoting Telesca v. Long Island Hous. P'ship, Inc., 2006 WL 1120636, at *1 (E.D.N.Y. Apr. 27, 2006)); accord Giminez v. Law Offices of Hoffman & Hoffman, 2012 WL 2861014, at *2 (E.D.N.Y. July 11, 2012); Flores v. S. Peru Copper Corp., 203 F.R.D. 92, 94 (S.D.N.Y. 2001).

III.   DISCUSSION

Because the Court has already granted Vystar's request for limited discovery regarding the breach-of-contract claim, see Conf. Transcript at 18-20, and Vystar has conceded that, given the pending motion to dismiss, it is not entitled to discovery regarding its fraud claim, see id. at 14, 16, the motion for a stay is limited to the question of whether Vystar should obtain discovery regarding the broker-dealer issue, see Pl. Mem. at 2; Def. Mem. at 1.   Thus, for purposes of addressing the strength of the pending motions to dismiss and for summary judgment, we

address the merits only of Vystar's broker-dealer-related counterclaim and affirmative defense.

A.   <u>Strength of the Motions</u>

Section 15 of the Exchange Act provides:

> It shall be unlawful for any broker or dealer . . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered . . .

15 U.S.C. § 78o(a)(1).   A separate section of the Exchange Act, Section 29(b), provides:

> Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract . . . the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract . . .

15 U.S.C. § 78cc(b).   Vystar uses these two provisions to argue that Ema's contract is void and unenforceable because Ema is not registered as a broker-dealer.   <u>See</u> Def. Mem. at 2-3, 9-14; <u>see also</u> AA ¶¶ 71, 151-83, 204-09.   Ema argues that Vystar's broker-dealer argument fails because (1) there is no private right of action under 15 U.S.C. § 78o(A)(1); (2) "Ema's registration as a broker dealer has no bearing on the performance [of] the agreement"; and (3) Ema is a trader rather than a broker-dealer and therefore is not required to register as such.   Pl. Mem. at 3-5.

As to the first point, "Vystar concedes there is no private right of action for damages pursuant to Section 15(a)(1) of the Exchange Act."   Def. Mem. at 4; <u>see also</u> <u>id.</u> at 7 ("In the ordinary course, a party does not have a private right of action for damages based upon a violation of Section 15 of the Exchange Act.") (citing 15 U.S.C. § 78o(a)(1)).   However, Vystar argues that a party can seek rescission of a contract for violations of the Exchange Act.   <u>See</u> <u>id.</u>

at 4, 7-8.   While Ema does not contest this point, it does argue that Vystar has failed to plead such a claim.   <u>See</u> Reply at 3.

Under the Exchange Act, contracts that violate the Act are "voidable at the option of the innocent party."   <u>Mills v. Electric Auto-Lite Co.</u>, 396 U.S. 375, 387 (1970).   In <u>Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis</u>, 444 U.S. 11, 19 (1979), the Supreme Court reiterated that <u>Mills</u> had recognized the "right to rescind" a contract that is void under Section 29(b).   <u>See</u> <u>also</u> <u>Royal Air Props., Inc. v. Smith</u>, 312 F.2d 210, 213 (9th Cir. 1962) (contract can be voided under Section 29(b) by "bring[ing] a suit to rescind"); <u>Cohen v. Citibank, N.A.</u>, 954 F. Supp. 621, 626 (S.D.N.Y. 1996); <u>Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co., Inc.</u>, 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992); <u>Slomiak v. Bear Stearns & Co.</u>, 597 F. Supp. 676, 681-82 (S.D.N.Y. 1984).

Ema argues that Vystar failed to allege the "elements of a claim for rescission based on fraud" which are "misrepresentation, concealment or nondisclosure of a material fact; an intent to deceive; and an injury resulting from justifiable reliance by the aggrieved party."   Reply at 3 (internal quotation marks omitted) (citing <u>Allen v. Westpoint-Pepperell, Inc.</u>, 945 F.2d 40, 44 (2d Cir. 1991)).   We reject this argument, however, because Vystar's rescission claim is not based on Ema's purported fraud, but rather on its failure to register as a broker-dealer.   <u>See</u> AA ¶¶ 204-09.   Such a claim is permissible.   <u>See</u>, <u>e.g.</u>, <u>NovaFund Advisors, LLC v. Capitala Grp., LLC</u>, 2020 WL 230089, at *13 (D. Conn. Jan. 14, 2020) (counterclaim asserted a viable claim for rescission by alleging plaintiff "was not and is not registered as a broker with the appropriate federal and state securities regulators and/or self-regulatory agencies") (citation omitted); <u>Couldock & Bohan, Inc. v. Societe Generale Sec. Corp.</u>, 93 F. Supp. 2d 220, 231-32 (D. Conn.

2000) (voiding a clearing agreement where plaintiff was an unregistered broker/dealer).   To the extent Ema argues Vystar did not sufficiently raise a rescission-based claim because it only cited "Section 15(a)(1) of the Exchange Act" and requested "Declaratory Judgment," Reply at 3, we disagree.   Vystar alleges that Ema tried "to effect transactions in, or to induce or to attempt to induce the purchase or sale of, securities as part of a regular business while not registered with the SEC as a securities dealer."   AA ¶ 205.   Vystar goes on to cite Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1), and request "the Court declare: (i) Ema, by its actions, violated Section 15(a)(1) of The Exchange Act; and (ii) pursuant to 15 U.S. Code § 78cc the agreements as void and/or rescinded."   <u>Id.</u> ¶¶ 208-09; <u>see also id.</u> ¶ ii.   Thus, Vystar's claim for rescission is not wanting for failure to cite the appropriate statute or to give notice that Vystar seeks rescission.

To state a claim for rescission under 15 U.S.C § 78cc(b), a party must show "that (1) the contract involved a prohibited transaction, (2) he is in contractual privity with the [opposing party], and (3) he is in the class of persons the Act was designed to protect."   <u>RWP Consol., L.P. v. Salvatore</u>, 534 F. Supp. 2d 364, 368 (D. Conn. 2008) (quoting <u>Pompano-Windy City Partners</u>, 794 F. Supp. at 1288); <u>accord</u> <u>Found. Ventures, LLC v. F2G, LTD.</u>, 2010 WL 3187294, at *6 (S.D.N.Y. Aug. 11, 2010).   This test manifests the common-law principle that a contract to perform an illegal act is void.   <u>See</u> <u>generally</u> <u>Couldock & Bohan, Inc.</u>, 93 F. Supp. 2d at 228 ("The federal and state securities statutes codify the common law doctrine invalidating contracts that violate their respective provisions.").   However, Section 29(b) can only "render[] void those contracts which by their terms violate the Act or the rules and regulations thereunder . . . , for it is only such contracts which are made 'in violation of,' or 'the performance of which involves

the violation of' the statute and the rules and regulations thereunder."   Slomiak, 597 F. Supp. at

682 (quoting Drasner v. Thomson McKinnon Secs., 433 F. Supp. 485, 501-02 (S.D.N.Y. 1977)).

Thus, rescission is not permitted when "the violation complained of is collateral or tangential to

the contract between the parties," id.; rather, a contract can be voided where "there could be no

performance under the contract without violating the Act," id. (citing Eastside Church of Christ

v. Nat'l Plan, Inc., 391 F.2d 357 (5th Cir. 1968)).   In other words, "under § 29(b) of the

Exchange Act, only unlawful contracts may be rescinded, not unlawful transactions made

pursuant to lawful contracts."   Pompano–Windy City Partners, Ltd, 794 F. Supp. at 1288

(Weinfeld, J.) (emphasis in original) (quoting Zerman v. Jacobs, 510 F. Supp. 132, 135

(S.D.N.Y. 1981)); accord Frati v. Saltzstein, 2011 WL 1002417, at *5 (S.D.N.Y. Mar. 14, 2011).

Ema makes a strong argument that Vystar failed to state a claim for rescission because

Vystar has not shown that "the contract involved a prohibited transaction."   Found. Ventures,

LLC, 2010 WL 3187294, at *6; accord NovaFund Advisors, 2020 WL 230089, at *13.   Vystar

claims that "the underlying agreements [were] illegal when made as well as when performed"

because Ema, as an unregistered broker-dealer, "could not have performed the contract with the

share conversions and sales without violating the terms of the Exchange Act."   Def. Mem. at 10.

In essence, Vystar contends that in entering and performing the contracts — in particular, the act

of converting shares at a below-market rate and subsequently selling the shares — Ema acted as

a broker-dealer and because Ema is not registered as a broker-dealer, Ema has violated the

Exchange Act.

The flaw in Vystar's argument, however, is that it does not identify a provision in the

contracts that obligates Ema to act as a broker-dealer.   Certainly, Vystar contends that Ema has

acted as a broker-dealer by converting the shares at a below-market rate and selling the shares. But Vystar does not explain why the act of converting shares violates the broker-dealer provision of the Exchange Act.   And assuming <u>arguendo</u> that the selling of converted shares made Ema a broker-dealer, the selling of those shares was not required by the contract.   Thus, "[a]t the time the parties entered into the Agreement, the Agreement could be performed without violating provisions of the securities laws."   <u>Berckeley Inv. Grp., Ltd. v. Colkitt</u>, 455 F.3d 195, 207 (3d Cir. 2006) (citation omitted).   In such circumstances, the contracts are not illegal.   <u>See id.</u> Vystar can rescind the contracts only if they were illegal at the time they were made, not because Ema later engaged in an illegal transaction.   <u>See Frati</u>, 2011 WL 1002417, at *5.

LG Capital Funding, LLC v. ExeLED Holdings, Inc., 2018 WL 6547160 (S.D.N.Y. Sept. 28, 2018), addressed the same issue that arises in this case.   In <u>LG Capital Funding</u>, the parties executed a securities purchase agreement and a convertible redeemable note, which allowed LG Capital Funding to convert its loan to the defendant, ExeLED Holdings, into shares of stock at a below-market rate.   <u>Id.</u> at *1.   The parties also entered into a debt purchase agreement by which ExeLED Holdings issued a second convertible redeemable note that was materially identical to the original note but allowed conversion at a better rate.   <u>Id.</u> at *2.   LG Capital Funding submitted several notices of conversion pursuant to this second note, which were executed.   <u>See id.</u>   However, ExeLED Holdings refused to execute the conversion following one notice of conversion and LG Capital Funding sued for breach of contract.   <u>Id.</u>   LG Capital Funding then sought summary judgment on its claim that ExeLED Holdings breached the contracts by failing to deliver the shares.   <u>Id.</u> at *4.   ExeLED Holdings interposed affirmative defenses contending that LG Capital Funding's "suit [was] barred and that the contracts-in-suit are void because LG

11

failed to register as a 'dealer.'"   Id. at *5.

LG Capital Funding rejected these defenses, concluding that "even if LG should have

registered, nothing in the Note or the SPA indicate[d] that those contracts 'could not have been

legally performed' because LG failed to do so."   Id. (citing Frati, 2011 WL 1002417, at *6 and

Found. Ventures, LLC, 2010 WL 3187294, at *7).   The court noted that while "[i]t is unlawful

for an unregistered broker to 'effect any transactions in, or to induce or attempt to induce the

purchase or sale of, any security' . . . neither the Note nor the SPA require LG to take any action

that would violate [15 U.S.C. § 78o(a)(1)]."   Id. (citations omitted).   The court remarked that

LG Capital Funding

> may have acted improperly when it sold off the shares that it received in response
> to conversions . . . [but] because nothing in the Note or SPA 'explicitly requires it
> to act as a broker,' the Court can only conclude that the Contracts were still
> capable of performance even if [LG Capital Funding] failed to register as a dealer.

Id. (alterations omitted) (quoting Found. Ventures, 2010 WL 3187294, at *7).   These principles

all apply equally to the instant case.   As was true in LG Capital Funding, any alleged subsequent

illegal activity by Ema is insufficient to void the contracts at issue here because the contracts

themselves did not require Ema to violate the Exchange Act.

Vystar attempts to distinguish LG Capital Funding on three grounds, none of which is

persuasive.   First, Vystar argues that "the LG decision is rendered in response to a motion for

summary judgment, after the record could be created and thus relied upon by the Court.   Here,

no such record has yet to be created."   Def. Mem. at 9.   The fact that LG Capital Funding arose

in the context of a summary judgment is irrelevant, however because the decision on the broker-

dealer question dealt purely with the application of legal principles to the undisputed terms of the

contracts — the same situation that prevails here.

Second, Vystar argues that <u>LG Capital Funding</u> "is easily distinguishable as the Court did not reference 15 U.S. Code § 78cc."   Def. Mem. at 9.   Vystar goes on to argue that

> It is axiomatic that if violation of the statute renders the underlying agreements void, whether they could in another situation be valid is not at issue nor applicable to the instant case.   Whether the underlying agreements as performed are, or become, inherently violative of the Exchange Act is a critical issue in this case, is an issue that requires discovery.

<u>Id.</u> (citations omitted).   The lack of citation to 15 U.S.C. § 78cc in <u>LG Capital Funding</u> is irrelevant, however, because the legal issue it considered — whether a contract was void due to the plaintiff not being registered as a broker-dealer — applies whether or not the court actually cited the statute.   As to the question of Vystar's need for discovery on the issue of how the agreements were "performed," we reject the argument that the manner in which the contract is actually "performed" subsequent to its signing has any bearing on the question of whether "[a]t the time the parties entered into the Agreement, the Agreement could be performed without violating provisions of the securities laws."   <u>Berckeley Inv. Grp., Ltd.</u>, 455 F.3d at 207 (citation omitted).   We have accepted all of Vystar's allegations as to Ema's conduct on this point.   No further discovery is needed.

Finally, Vystar suggests that <u>LG Capital Funding</u> was wrongly decided because it "failed to take into consideration [that] the illegality involved was inseparable from the performance of the contract at issue."   Def. Mem. at 9 (citation omitted).   This argument, however, misapprehends the law governing the voiding of illegal contracts.   <u>LG Capital Funding</u> in fact correctly applied the law by concluding that "neither the Note nor the SPA require LG to take any action that would violate [the broker-dealer] statute."   2018 WL 6547160, at *5.   Vystar's reliance on <u>Slomiak v. Bear Stearns & Co.</u>, 597 F. Supp. 676 (S.D.N.Y. 1984), <u>see</u> Def. Mem. at

8-10, is particularly unhelpful since <u>Slomiak</u> found that the plaintiff was not entitled to

rescission, 597 F. Supp. at 683.   Vystar's reference to the Fifth Circuit's decision in <u>Regional</u>

<u>Properties, Inc. v. Financial & Real Estate Consulting Co.</u>, 752 F.2d 178 (5th Cir. 1985), Def.

Mem. at 7-10, similarly does not help its cause because, as <u>GFL Advantage Fund, Ltd. v. Colkitt</u>,

272 F.3d 189 (3d Cir. 2001), noted, "the violation alleged in <u>Regional Properties</u> was

'inseparable from the performance of the contract' that plaintiffs were attempting to void."   <u>Id.</u>

at 201 (citing <u>Slomiak</u>, 597 F. Supp. at 682).   Nothing in <u>Regional Properties</u> suggests that

action taken with the proceeds of a transaction permitted by a contract can void the contract.

<u>See also</u> <u>Omega Overseas Partners, Ltd. v. Griffith</u>, 2014 WL 3907082, at *4 & n.5 (S.D.N.Y.

Aug. 7, 2014) (interpreting the Exchange Act as stating "a contract is void only if it was made

illegally or requires illegal performance") (citing cases and distinguishing <u>Regional Properties</u>

because "the broker-dealer contract at issue in that case could not have been legally performed

because the broker-dealer had never registered with the SEC.   The Fifth Circuit's opinion

therefore . . . stands only for the reasonable proposition that the circumstances surrounding a

contract's performance can make the performance required illegal even if the contract's terms

are themselves innocuous.") (citations omitted).

Notably, the Third Circuit specifically addressed whether the subsequent sale of stock

after conversion can void a contract under 15 U.S.C. § 78cc(b) in <u>Berckeley Investors Group,</u>

<u>Ltd. v. Colkitt</u>, 455 F.3d 195 (3d Cir. 2006).   In that case, the plaintiff had a contractual option

to convert the balance of a loan into stock at a below-market rate.   <u>Id.</u> at 197.   The defendant

accused the plaintiff of improperly short selling the shares to lower the market price and thus

obtain more shares.   <u>Id.</u> at 197-98.   The Third Circuit held that plaintiff's sales "were tangential

14

to the parties' basic obligations under the Agreement," stating:

> At the time the parties entered into the Agreement, the Agreement could be performed without violating provisions of the securities laws.   As we observed in <u>GFL</u>, "unlawful transactions made pursuant to lawful contracts" do not fall within the ambit of Section 29(b).   Thus, to the extent that a trier of fact determines that Berckeley's downstream sales of unregistered NMFS shares violated Section 5, those sales are too attenuated to establish a claim under Section 29(b).

<u>Id.</u> at 206-07 (internal citations and footnotes omitted).   Here, the Note and SPA required only that Ema provide Vystar with a loan and that Vystar allow Ema to convert the balance into shares.   The fact that Ema might have later sold its shares in violation of the broker-dealer provision is tangential to the contracts themselves.

In sum, Ema has made a strong showing that it is likely to succeed on its motions to dismiss the broker-dealer-related claim and to strike the related defense.

   B.   <u>Burden on Ema and Third Parties</u>

As to burden, Ema's proffer on the subject is limited to a footnote of its opening brief, in which it states that "a stay is appropriate in light of the large volume of discovery sought . . . by defendants and the cost, including several non-party subpoenas and document requests for thousands of documents from 37 unrelated transactions."   Pl. Mem. at 8 n. 2 (citations and emphasis omitted); <u>accord</u> Reply at 9 ("[d]efendant duplicitously claims that the discovery in this case is not burdensome, but neglects to mention that it served several subpoenas and discovery requests seeking information with respect to 37 unrelated transactions — the very definition of burdensome").   Vystar's brief is equally spare on the topic.   It says only that "the discovery sought, directly through Plaintiff or third parties, can easily be procured in a matter of months," following which there would apparently be a "quick round of depositions."   Def. Mem. at 4.

Notwithstanding the dearth of information relating to this aspect of the stay analysis, the

15

Court concludes that the discovery sought will impose a significant burden.   "Months" of discovery certainly sounds burdensome, and the discovery sought by Vystar is all the more troubling as it appears that Vystar is bent on obtaining discovery from third parties to address the broker-dealer issue.   See Letter Motion, dated May 13, 2020 (Docket # 65); Letter, dated May 19, 2020 (Docket # 70); Letter, dated May 21, 2020 (Docket # 72).   Thus, this factor favors Ema.

     C.   Prejudice to Vystar

        Vystar has a section of its brief purportedly devoted to the issue of prejudice but it fails to provide any explanation of why a delay in obtaining discovery will be actually prejudicial.   See Def. Mem. at 17-18.   Instead, Vystar essentially argues the merits of the rescission issue, noting, tautologically, that "discovery on the rescission claim directly applies to Plaintiff's breach of contract claim" and "Plaintiff should not be permitted to withhold additional discovery on the rescission defense and counterclaims."   Def. Mem. at 17.   This does nothing to explain any prejudice Vystar would face if discovery on the rescission claim was stayed.

        In its preliminary statement, Vystar argued that a stay "would preclude [] Vystar the right to timely assert its claims and pursue them to judgment, significantly impeding its litigation strategy."   Def. Mem. at 2.   This, however, does not demonstrate prejudice sufficient to avoid a stay, especially given that briefing on Ema's motions to dismiss and for summary judgment is complete.   See, e.g., Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A., 2016 WL 3906712, at *7 (S.D.N.Y. July 14, 2016) (finding no prejudice where plaintiffs "offer[ed] no further discussion of what particular strategic decisions will need to be made prior to the decision on the motion to dismiss.   Moreover, the motion to dismiss [was] fully briefed, so any

16

consequent stay is likely to be short-lived.") (citation omitted); Integrated Sys. & Power, Inc.,
2009 WL 2777076, at *1 (stay imposed where briefing on motion to dismiss would be completed
within one month and stay would therefore delay discovery "for only a few months").   Thus,
this factor also favors Ema.

*   *   *

In conclusion, the stay factors entirely favor Ema.   Accordingly, a stay of discovery is
warranted pending resolution of Ema's motions.

IV.   CONCLUSION

For the reasons set forth above, Ema Financial, LLC's motion for a stay of discovery
pending disposition of its motions to dismiss and for summary judgment (Docket # 81) is
granted.

SO ORDERED.

Dated:  August 18, 2020
        New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

17