|  |  |
|---|---|
| **UNITED STATES DISTRICT COURT**<br>**SOUTHERN DISTRICT OF NEW YORK**<br>-----------------------------------------------------------------x<br>EMA FINANCIAL, LLC,<br>                              **Plaintiff,**<br><br>         v.<br><br>VYSTAR CORP., INC.,<br><br>                              **Defendants.**<br><br>-----------------------------------------------------------------x | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC#: _____<br>DATE FILED: __3/29/2021_____<br><br><br>**1:19-cv-01545-ALC-GWG**<br><u>**OPINION AND ORDER**</u> |

**ANDREW L. CARTER, JR., District Judge:**

The Court now considers a motion by Plaintiff EMA Financial, LLC that the Court enter summary judgment in its favor and dismiss all claims and counterclaims by Defendant Vystar Corp, Inc. For the reasons that follow, the Court DENIES EMA's motion, except that it DISMISSES one of Vystar's defenses and the corresponding counterclaim.

### Background

This matter arises from a series of Agreements between the parties that includes a Securities Purchase Agreement (the "SPA") and a Convertible Note ("Note") valued at $80,000. EMA seeks to recover damages for several breaches of the Note and SPA, the details of which have been set forth in prior opinions of this Court and the Honorable Gabriel W. Gorenstein, to whom this case is referred for general pretrial purposes. *See EMA Fin., LLC v. Vystar Corp.*, No. 1:19-cv-01545 (ALC), 2020 U.S. Dist. LEXIS 44762 (S.D.N.Y. Mar. 13, 2020), *EMA Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75 (S.D.N.Y. 2020). The Court therefore assumes the reader's familiarity with the underlying Agreements.

By its Amended Answer, Affirmative Defenses and Counterclaims ("ACC", ECF No. 60), Vystar asserts that EMA's claim is barred because, *inter alia*, EMA acted as an unregistered

1

broker-dealer in violation of Section 15(a)(1) of the 1934 Securities Exchange Act, 15 U.S.C. § 78o(a)(1); the Agreements are unconscionable; and EMA breached the Agreements by calculating the balance of the Note incorrectly. Vystar counterclaims: that EMA manipulated its stock in violation of Section 10(b) and Rule 10b-5 of the Exchange Act (Count I); that EMA violated Section 15(a)(1) of the Exchange Act by acting as an unregistered broker-dealer (Count II); that the Agreements are unconscionable, unenforceable, and that the legal fee provision must be mutual (Count III); seeking to recover in unjust enrichment if the contract is found to be void or unenforceable (Count IV); for breach of contract by EMA (Count V); and for attorneys' fees (Count VI).

On June 4, 2020, EMA filed a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure asking the Court to grant summary judgment on its breach of contract claim and to dismiss Vystar's counterclaims and affirmative defenses pursuant to Rules 9 and 12. ECF No. 75. Vystar opposed the motion for summary judgment and dismissal on July 8, 2020. ECF No. 91. EMA filed a reply in support of the motion for summary judgment and dismissal on July 28, 2020. ECF No. 103.

## Standard of Review

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). All facts must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable

inferences. *See Sulewski v. Federal Express Corp.,* 933 F.2d 180, 182 (2d Cir. 1991). "Where . . . a party moves for summary judgment on the ground that the nonmoving party bears the burden of proof and will be unable to prove an essential element of his case, Rule 56 allows summary judgment only 'after adequate time for discovery.'" *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)).

## Discussion

In light of the limited discovery that has occurred in this case to date, as a first step, the Court considers the viability of Vystar's defenses and counterclaims. To the degree they are properly pleaded, it would be premature to grant summary judgment. Although the Court deems it appropriate to dismiss the claim and counterclaim based on EMA being an alleged unregistered broker-dealer, the Court concludes that Vystar is entitled to discovery as to the others. Accordingly, the Court GRANTS EMA's motion in part and DENIES it in part.

    A.    Broker-Dealer Affirmative Defense and Counterclaim

The Court begins with Vystar's argument that the Agreements are voidable because EMA acted as an unregistered broker-dealer in violation of Section 15 of the Securities Exchange Act of 1934, thereby running afoul of Section 29(b) of the Exchange Act. For the reasons that follow, the Court DISMISSES both the defense and counterclaim based on this argument. *See* ACC ¶ 71 (Affirmative Defense); ¶¶ 204-209 (Counterclaim). [1]

---

[1] The Court notes that it reaches the same conclusion on this issue that Judge Gorenstein did in his August 18, 2020 Opinion and Order granting a stay of discovery in this matter. Given the timing of the Court's decision on this Motion, the Court dismisses the objections to Judge Gorenstein's Order to Stay as moot.

Section 15 provides: "It shall be unlawful for any broker or dealer . . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered. . . ." 15 U.S.C. § 78o(a)(1).

Section 29(b), provides:

> Every contract made in violation of any provisions of this title [15 USCS §§ 78a et seq.] or of any rule or regulation thereunder, and every contract. . . heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this title [15 USCS §§ 78a et seq.] or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract . . .

15 U.S.C. § 78cc(b).

"To establish a violation of Section 29(b), the plaintiffs must show that (1) the contract involved a prohibited transaction, (2) he is in contractual privity with the defendant, and (3) he is in the class of persons the Act was designed to protect." *Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*, 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992) (citing *Regional Properties, Inc. v. Financial and Real Estate Consulting Co.*, 678 F.2d 552, 559 (5th Cir. 1982)) (internal quotes omitted). However, "under [Section] 29(b) of the Exchange Act, only unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts." *Id.* (citing *Zerman v. Jacobs*, 510 F. Supp. 132, 135 (S.D.N.Y.) (Weinfeld, J.), *aff'd*, 672 F.2d 901 (1981)); *see also Slomiak v. Bear Stearns & Co.*, 597 F. Supp. 676, 682 (S.D.N.Y. 1984); *Drasner v. Thomson McKinnon Securities, Inc.*, 433 F. Supp. 485, 488-89 (S.D.N.Y. 1977).

EMA argues that Vystar's argument fails as a matter of law because the Agreements do not require EMA to act as a broker-dealer and are therefore not voidable under Section 29(b).

4

Vystar urges the Court to permit more discovery on EMA's conduct to support this claim. However, further discovery would be futile for the reasons explained in *LG Capital Funding, LLC v. ExeLED Holdings, Inc.*, 2018 U.S. Dist. LEXIS 202540, at *16 (S.D.N.Y. Sep. 28, 2018). There, the court granted summary judgment on a claim like Vystar's that a SPA was voidable because the defendant was an unregistered broker-dealer. The *LG* Court concluded that "LG may have acted improperly when it sold off the shares that it received in response to conversions of the second note, for example, but because nothing in the Note or the SPA 'explicitly require[d it] to act as a broker,' the Court can only conclude that the Contracts were still capable of performance even if LG failed to register as a dealer. Put another way, the Note and the SPA are not voidable 'unlawful contracts', and ExeLED cannot use the threat of a hypothetical SEC action to vitiate contracts that were lawful at the time they were executed." *Id.* Notably, the LG Court did not resolve any factual issues regarding whether LG did or did not act as a broker-dealer.

The logic from *LG* applies with equal force in this case. Vystar contends that EMA acted as an unregistered broker-dealer in violation of the Exchange Act. However, Vystar has not indicated any way in which the Agreements, which are incorporated by reference into the Complaint and upon which it could rely on a motion to dismiss, require EMA to do so. *See Frati v. Saltzstein*, 2011 U.S. Dist. LEXIS 25567, at *17-18 (S.D.N.Y. Mar. 14, 2011) ("Lastly, Plaintiffs claim that § 29(b) gives them the right to rescind the Subscription Agreements because RAM, Saltzstein, and Fein failed to register as broker-dealers under § 15(a)(1) of the '34 Act. (Pl. Mem. 20 n.45.) There is, however, no reason to believe that the contracts themselves could not be legally performed — a fact which is fatal to Plaintiffs' claim."); *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 202 (3d Cir. 2001) ("In the end, GFL's alleged unlawful activity (*i.e.*, its short sales) is too attenuated from the parties' valid, lawful contracts (*i.e.*, the National Medical and EquiMed

5

notes) or GFL's performance thereunder. Therefore, we conclude that the notes were neither made nor performed in violation of any federal securities laws as is required for rescission under Section 29(b)). Though Vystar urges the Court that EMA's allegedly illegal conduct is "inextricably intertwined" with the Agreement, it has pleaded no facts showing as much. Accordingly, the Court dismisses this defense.

The Court also dismisses Vystar's counterclaim that EMA acted as an unregistered broker-dealer in violation of Rule 15(a)(1) because that provision provides no private right of action. *See Goodman v. Shearson Lehman Bros., Inc.*, 698 F. Supp. 1078, 1083 (S.D.N.Y. 1988).

B.  Section 10(b) and Rule 10b-5 of the 1934 Exchange Act

The Court next considers Vystar's misrepresentation and market manipulation counterclaim. ACC ¶ 184-203. EMA contends that this counterclaim should be dismissed as it is duplicative of Vystar's breach of contract claim and fails to comply with Rule 9(b) or plead loss causation, scienter, or damages. The Court considers the misrepresentation and market manipulation allegations in turn. While the Court dismisses the claim for misrepresentation, it does not dismiss the claim for market manipulation.

*Misrepresentation*

The six elements of a misrepresentation claim under Section 10(b) and its implementing rule, Rule 10b-5, are: "(1) a material misrepresentation or omission by the defendant; (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) (citing *Stoneridge*

*Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157, 128 S. Ct. 761, 169 L. Ed. 2d 627 (2008)).

"Securities fraud claims are subject to heightened pleading requirements that the plaintiff must meet to survive a motion to dismiss" under Rule 9(b) of the Federal Rules of Civil Procedure. *ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). "A securities fraud complaint based on misstatements must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (citing *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *Id.* (citing Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986)).

A plaintiff "must also meet the PSLRA's pleading requirements or face dismissal." *Id.* (citing 15 U.S.C. § 78u-4(b)(3)(A)). "The statute insists that securities fraud complaints 'specify' each misleading statement; that they set forth the facts 'on which [a] belief that a statement is misleading was 'formed'; and that they 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (quoting 15 U.S.C. § 78u-4 (b)(1), (2)). "Therefore, '[w]hile [courts] normally draw reasonable inferences in the non-movant's favor on a motion to dismiss,' the PSLRA 'establishes a more stringent rule for inferences involving scienter' because the PSLRA requires particular allegations giving rise to a strong inference of scienter." *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 194 (2d Cir. 2008).

Vystar alleges that EMA's alleged misrepresentations began "in the course of its telephone calls with Vystar to induce Vystar to trust and work with EMA". ACC ¶ 186. Vystar further alleges that misstatements "continued by use of the mails and wires and was not limited to Vystar, but other publicly traded companies." ACC ¶ 186. In terms of pre-contract misrepresentations, Vystar alleges that sometime in January 2018 Byron Campos, an EMA employee, represented that "that EMA's business model was to create relationships with companies, to work with them for their benefit". ACC ¶ 90. Campos also stated that "EMA had no desire to harm the company or its shareholders; to the contrary, [Vystar] was told by Mr. Campos that it would be counterproductive for EMA to hurt its borrowers, and by extension, their shareholders, because EMA makes money from the transactions by virtue of the discounted conversions in lieu of a cash repayment". ACC ¶ 91. Vystar contends that it "relied upon such statements from Mr. Campos that took place between January and February 2018, and such served as the basis for Vystar utilizing EMA as a funding partner." ACC ¶ 92.

EMA argues that Vystar's allegations ultimately sound in contract and are not a proper subject for a securities claim. With respect to the pre-contract misrepresentations, the Court agrees. "Ultimately, Section 10(b) and Rule 10b-5 are designed to 'protect persons who are deceived in securities transactions—to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate.'" *Alfandary v. Nikko Asset Mgmt.*, Co., No. 17-cv-5137 (LAP), 2019 U.S. Dist. LEXIS 169524, at *17 (S.D.N.Y. Sep. 30, 2019) (quoting *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir. 1984)). Though it's not clear that Vystar has a viable claim for fraudulent inducement, that is clearly the thrust of its quarrel with EMA as to its pre-contract

8

statements. Vystar "may not transform that state law . . . action into a fraud claim under the federal securities laws." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 776 (2d Cir. 1991).

Although Vystar alleges that EMA's misstatement were made not only to Vystar, but also to publicly traded companies, Vystar does not plead any misstatements, apart from the pre-contract statements, with specificity. Having concluded the pre-contract misstatements are a matter for contract, not securities, law, the Court need not consider the other arguments the parties have advanced regarding the misrepresentation claim. The Court DISMISSES so much of the Section 10(b) claim as pertains to misrepresentation.

Next, the Court turns to the market manipulation allegations. "Market manipulation requires a plaintiff to allege (1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 369 (2d Cir. 2014) (citing *ATSI Communs.*, 493 F.3d at 100-01). "[M]anipulation 'connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities.'" *ATSI Communs.,* 493 F.3d at 100 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199, 96 S. Ct. 1375, 1384 (1976)). "[C]ase law in this circuit and elsewhere has required a showing that an alleged manipulator engaged in market activity aimed at deceiving investors as to how other market participants have valued a security. The deception arises from the fact that investors are misled to believe that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators." *Id.* (citations and internal quotation marks omitted).

"Because a claim for market manipulation is a claim for fraud, it must be pled with particularity under Rule 9(b)." *ATSI Communs.*, 493 F.3d at 101. However, because "[a] claim of manipulation . . . can involve facts solely within the defendant's knowledge . . . at the early stages of litigation, the plaintiff need not plead manipulation to the same degree of specificity as a plain misrepresentation claim." *Id.* at 102. "Accordingly, a manipulation complaint must plead with particularity the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants. General allegations not tied to the defendants or resting upon speculation are insufficient. This test will be satisfied if the complaint sets forth, to the extent possible, 'what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue.'" *Id.* (citations omitted).

"Because a claim for market manipulation requires a showing of scienter, the PSLRA's heightened standards for pleading scienter also apply." *Steginsky*, 741 F.3d at 369 (quoting *ATSI Communs.,* 493 F.3d at 102). Accordingly, "the complaint must plead with particularly facts giving rise to a strong inference that the defendant intended to deceive investors by artificially affecting the market price of securities." *ATSI Communs.*, 493 F.3d at 102.

EMA contends that the market manipulation claim should be dismissed as duplicative of EMA's breach of contract claim. This argument is based on an incomplete view of Vystar's claim with which the Court disagrees. The Court reads Vystar's market manipulation allegations as not focusing on the underlying contract and conversions per se. Rather, the allegations focus on an overall scheme to time conversions and sales to lower Vystar's common stock price to EMA's advantage. Specifically, Vystar alleges that EMA: "use[d the] loan documents to manipulate the price of Vystar's stock by causing large volumes of stock to be sold with the intent to artificially

10

depress the price of the stock", ACC ¶ 187 and "acquir[ed] then dump[ed] a large volume of stock on the market in a very short time frame, artificially depressing the stock", ACC ¶ 189. Vystar alleges that its stock price declined "after each of the conversions and mass selling of the positions acquired at the deep discount", which "caused the stock to artificially decline from a price of $.03 prior to the first conversion to a low of the year at $.0005." ACC ¶ 190. "Vystar further alleges that this scheme caused its "stock value to decline while at the same time EMA secured millions of Vystar shares to be issued to it, providing it further ability to continue the same scheme". ACC ¶ 193. "Large volume sales are not inherently manipulative", but when combined with an allegation that EMA dumped Vystar's stock "to drive down its price and increase the number of shares it could obtain" under the Agreements, Vystar "plausibly pleads something more". *Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*, 2019 U.S. Dist. LEXIS 50310, at *25-26 (S.D.N.Y. Mar. 26, 2019) (citing *ATSI Communs.*, 493 F.3d at 101); *see also Compudyne Corp. v. Shane*, 453 F. Supp. 2d 807, 821-22 (S.D.N.Y. 2006) ("The FAC pleads that these Defendants engaged in a fraudulent scheme to profit by depressing the price of CompuDyne stock during the period in which the PIPE was being priced and then shorting CompuDyne stock and covering those short positions with the shares to be delivered on the PIPE.").

EMA also argues that Vystar fails to comply with Rule 9(b) or plead loss causation, scienter, or damages. EMA's arguments are unpersuasive because they, again, rely on a stilted view of Vystar's claim as targeting the conversions themselves rather than the full scheme alleged. The Court concludes that the allegations laid out above satisfy the less stringent Rule 9(b) standard for market manipulation. It further concludes that the allegations that EMA had a scheme to take advantage of depressed common stock prices suffices to plead scienter. *See* e.g., *Tanzanian*, 2019 U.S. Dist. LEXIS 50310, at *29; *See also Steginsky*, 741 F.3d at 369 ("scheme to take advantage

11

of depressed share prices" shows compelling inference of scienter). The Court further concludes that Vystar pleaded loss causation and damages by alleging that the scheme both drove down the price of shares of its common stock and allowed Vystar to receive more shares of common stock than it would have been entitled to absent the scheme. *See Tanzanian*, 2019 U.S. Dist. LEXIS 50310, at *32-33.

Accordingly, the Court DENIES EMA's motion to dismiss so much of Vystar's Section 10(b) claim as pertains to market manipulation.

C. Unconscionability

Under Delaware law[2], "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract or it may enforce the remainder of the contract without the unconscionable clause." *Reserves Mgmt., LLC v. Am. Acquisition Prop. I, LLC*, 86 A.3d 1119 (Del. 2014). "The traditional test is this: a contract is unconscionable if it is 'such as no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other.'" *Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956, 960 (Del. 1978) (*Williams v. Walker-Thomas Furniture Co.*, 121 U.S.App.D.C. 315, 320, 350 F.2d 445, 450, 18 A.L.R.3d 1297, 1301-3 (1965)).

Like New York, Delaware considers whether a contract is procedurally and substantively unconscionable. "Procedural unconscionability 'examines the procedures that led to the contract with the goal of evaluating whether seemingly lopsided terms might have resulted from arms'-length bargaining,' and courts focus on 'the relative bargaining strength of the parties and whether

---

[2] The parties agree that Delaware law applies, though they disagree on whether it is the same as New York law for certain issues not relevant for the instant Opinion and Order.

12

the weaker party could make a meaningful choice.'. . . Substantive unconscionability, on the other hand, tests the substance of the exchange: a contract will be deemed substantively unconscionable 'if the terms evidence a gross imbalance that "shocks the conscience"' or if the bargain is on terms 'so extreme as to appear unconscionable according to the mores and business practices of the time and place.' Procedural and substantive unconscionability are not 'separate elements of a two prong test'—instead, the 'analysis is unitary, and it is generally agreed that if more of one is present, then less of the other is required.'" *Chemours Co. v. DowDuPont Inc.*, No. 2019-0351-SG, 2020 Del. Ch. LEXIS 112, at *31-32 (Ch. Mar. 30, 2020) (citations omitted).

Here, Vystar alleges that the Agreements were unconscionable because they "were form agreements"; although "there were small points negotiated, for all intents and purposes it was a take it or leave it proposition from EMA"; "[t]his take it or leave it proposition was done with the knowledge by EMA that Vystar needed the money and EMA was in the position to provide it" and "EMA was in a position of strength as [to] take it or leave it positions regarding its form agreements." ACC ¶¶ 94-96. As to substantive unconscionability, Vystar alleges the Agreements contain unenforceable penalty clauses. ACC ¶¶ 106-109. Vystar further asserts that the non-mutual attorney fee provision is substantively unconscionable. ACC ¶ 213-216.

EMA does not put forth any argument that Vystar's unconscionability claim is improperly pleaded under Rule 8 or Rule 12. The Court concludes that they are properly pleaded under those permissive standards. Instead, EMA contends that Vystar's unconscionability argument is deficient because there is no evidence that the terms are not commercially reasonable.

Given the limited discovery in this case, it is premature for the Court to reach such a conclusion. The cases that EMA cites in support of summary judgment are not the contrary. In each the defendant had an opportunity for discovery prior to dismissal of their unconscionability

13

argument. *See EMA Fin., LLC v. 5barz Int'l, Inc.*, No. 18-CV-4995 (VEC), 2019 U.S. Dist. LEXIS 230418, at *18 (S.D.N.Y. Sep. 18, 2019) (dismissing unconscionability defense on motion for summary judgment because Defendants failed to plead defense and thereby waived it, and failed to argue what further development of the record would support such a claim); *LG Capital Funding, LLC v. PositiveID Corp.*, No. 17-CV-1297-NGG-SJB, 2019 U.S. Dist. LEXIS 126991, at *37 (E.D.N.Y. July 29, 2019) (granting summary judgment on unconscionability where "[plaintiff] cites to no evidence that speaks to the issue of unconscionability, nor are any of its Rule 56.1 statements identified as pertinent to the defense); *Clarke v. Max Advisors*, 235 F. Supp. 2d 130, 145 (N.D.N.Y. 2002) (granting post-discovery summary judgment that agreement was not unconscionable).

Accordingly, the Court declines to dismiss Vystar's unconscionability defense and counterclaim at this time. With respect to the counterclaim, EMA argues for dismissal on the basis that unconscionability is an affirmative defense, not a cause of action. "This appears to be an open question", *Red Fort Capital, Inc. v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 475 (S.D.N.Y. 2019) (citing cases taking opposing views), which the Court need not resolve today. Further, because the issue of unconscionability is yet unresolved, the Court declines to reach the parties' contract claims.

### Conclusion

For the reasons above, the Court DENIES summary judgment to EMA, except that it DISMISSES Vystar's broker-dealer defense and counterclaim. The parties are ORDERED to resume discovery. The Clerk of Court is respectfully directed to close the motions at ECF Nos. 75 and 112.

**SO ORDERED.**

Dated: March 29, 2020
     New York, New York

                                                **ANDREW L. CARTER, JR.**
                                                **United States District Judge**