# LAW OFFICE OF
# JEFFREY FLEISCHMANN, P.C.
### 150 Broadway, Suite 900
### New York, N.Y. 10038

JEFFREY FLEISCHMANN

Telephone: (646) 657-9623
Facsimile: (646) 351-0694

---

January 6, 2022

Via ECF:
Hon. Gabriel W. Gorenstein
United States District Court
For the Southern District of New York
500 Pearl Street
New York, New York 10007

## MEMORANDUM ENDORSED

Re*: EMA Financial, LLC v. Vystar Corp., Case No.*
Civil Case No.: 19-cv-01545-ALC-GWG

Dear Judge Gorenstein:

We represent EMA Financial LLC ("EMA" or "Plaintiff") with respect to the above referenced matter. We write with regards to Defendant Vystar Corp.'s ("Vystar" or "Defendant") failure to fully comply with its discovery obligations, namely its refusal to produce documents and other information relating to Defendant's performance and/or defaults under similar convertible notes as the one at issue here. Defendant's failure to provide these documents requires the court's intervention to compel Defendant's production of same.

On or about October 19, 2021, Plaintiff served Defendant with certain supplemental discovery requests. See Exhibit A.  On or about November 12, 2021, Defendant responded by objecting to Request No. 1 which sought, the following: "All documents concerning or reflecting an event of default under a note, securities purchase agreement, or a contract relating to VYSTAR." Defendant also objected to Request No. 2 which sought "All documents concerning or reflecting an action or non-action that another party construed as an event of default under a note, securities purchase agreement, or a contract relating to VYSTAR." Defendant also objected to Request No. 3 which sought "All documents concerning or reflecting a settlement agreement with a convertible noteholder relating to VYSTAR." A true and accurate copy of Defendant's Responses and Objections to Plaintiff's Second Set of Document Requests is annexed hereto as Exhibit B. On or about December 14, 2021, I held a meet and confer via video conference with Barry Bordetsky, Defendant's counsel, to discuss this issue, but we were unable to resolve it.

This action stems from Defendant's various defaults under a convertible Note (the "Note") and Securities Purchase Agreement ("SPA").  These defaults include failing to honor certain notices of conversions, failure to maintain a reserve of shares as required under the agreements, and the switching of transfer agents in violation of the terms of the agreements.

Defendant's defense to this action has been to assert, inter alia, that it did not honor the conversion notices because Plaintiff purportedly "over-converted", that is, converted more than the amounts due under the Note and SPA, or otherwise "miscalculated" or did not properly calculate the amounts due.  See Answer, ¶169, 181.  [ECF Doc. No. 50].

Aside from Plaintiff, Defendant entered into similar agreements, including SPAs and convertible note agreements with several other companies, including Peak One Opportunity Fund, LP, Powerup Lending Group, Ltd, Crown Bridge Partners LLC, Auctus Fund LLC and FirstFire Global Opportunities Fund LLC.  See, Exhibit C, 55:15-56:15, 56:16-59:2, 59:3-60:23, 61:22-62:18, 62:23-63:19.  Based upon the responses received from third-party subpoenas, it appears that Defendant defaulted on most (if not all) of the Notes and SPAs it entered into with these other companies.  Critically, the response from the third-party subpoenas suggests that Defendant offered up the same or similar accusations of "miscalculation" or the amounts due with respect to the third-party notes and SPA's.  For example, on January 29, 2019, Greg Rotman—who appeared as Defendant's 30(b)(6) witness at Defendants' deposition—sent an email to FirstFire stating that "Can you do me a favor and calculate out long form how your [sic] getting to the numbers on the exercise form, Mike is having some trouble getting the same numbers[1]."  See Ex. D. This document was received from non-party Worldwide Stock Transfer in response to a subpoena, and was not produced by Defendant, despite our requests.

The documents are also important because at the deposition of Vystar, Mr. Rotman appeared as the designated 30(b)(6) witness and claimed, incredibly, that he did not recall whether Vystar had been accused of defaulting, or if Vystar had defaulted, under any other Note or SPA despite admitting that Vystar has entered into several "Settlement Agreement" with various other noteholders.  See Exhibit C, 55:8-55:19, 57:21-58:8, 60:2-60:10, 62:6-62:8, 63:14-63:16. Moreover, Mr. Rotman could neither recall the details of the settlement agreements with these non-parties nor explain why Vystar entered into the various settlement agreements with the non-parties. See, Exhibit C, 55:15-56:15, 58:9-59:1, 60:6-60:24, 62:9-62:18, 63:7-63:13.

Additionally, Vystar specifically put the status of the other agreements at issue in this litigation. Vystar submitted a Declaration to the Court with documents relating to its agreements with other parties in connection with Vystar's efforts to prove its supposed healthy financial condition. Among other things, Defendant represented that "Vystar was and continues to be a viable and ongoing business." See, Declaration of Steven Rotman, ¶24. [ECF Doc. No. 33-1]. To support its claims regarding its solvency, Defendant stated that it "has recently paid off all of its debts as to third party corporate convertible notes (non-insider), specifically paying off two loans from Peak One and Powerup Lending Group, Ltd. See, Declaration of Steven Rotman, ¶28. [ECF Doc. No. 33-1]. A copy of the Declaration of Steven Rotman is annexed hereto as Exhibit E. Given that Vystar appears to have defaulted on most if not all of these third-party notes, and specifically put it at issue, it must be compelled to produce documents relating to these other defaults.  See, *Condit v. Dunne*, 225 F.R.D. 100, 112 (S.D.N.Y. 2004) ("Because of the broad relevance standard, which should not be limited lightly, and plaintiff opening the door to his financial information as indicated by defendant, this Court finds the information in this regard sought during Condit's deposition relevant and discoverable.") The rule of "opening the door," or "curative admissibility," gives the trial court discretion to permit a party to introduce otherwise

---

[1] "Mike" appears to be a reference to Mike Refelo, who serves as Defendants transactional counsel.

inadmissible evidence on an issue (a) when the opposing party has introduced inadmissible evidence on the same issue, and (b) when it is needed to rebut a false impression that may have resulted from the opposing party's evidence. See, e.g., *United States v. Rea*, 958 F.2d 1206, 1225 (2d Cir. 1991); *United States v. Brown*, 287 U.S. App. D.C. 316, 921 F.2d 1304, 1307 (D.C. Cir. 1990); *United States v. Whitworth*, 856 F.2d 1268, 1285 (9th Cir. 1988), cert. denied, 489 U.S. 1084, 103 L. Ed. 2d 846, 109 S. Ct. 1541 (1989); *Dobson v. Doughtery*, 2018 US Dist LEXIS 205155, at *18 [WDNY Dec. 3, 2018, No. 17-CV-1014-LJV-MJR])("similar conduct by the Deputies may be admissible for reasons other than intent, such as to demonstrate a pattern by those individuals, a lack of mistake, or a modus operandi. Moreover, the concept of discovery is broad and extends to relevant material reasonably calculated to lead to the discovery of admissible evidence.")

Here, the information requested is necessary to rebut an impression that may have resulted from the opposing party's evidence after Defendant has made several statements regarding the transactions. Indeed, at his deposition, Mr. Rotman was asked whether Defendant defaulted on its obligations under other notes with other lenders. In response, Mr. Rotman routinely testified that he could not recall the facts relating to Defendant's performance of those notes. See, Exhibit C, 55:15-56:15, 56:16-59:2, 59:3-60:23, 61:22-62:18, 62:23-63:19. Defendant's failure to provide a conclusive answer necessitates Plaintiff's discovery to determine Defendant's course of conduct with regards to those notes. Accordingly, Plaintiff is entitled to the discovery of the requested information.

The production of these documents will lead to relevant evidence with respect to Vystar's breach of the agreements in the instant action; documents relating to Defendant's conduct regarding similar notes evidences Vystar's habits or routine practices with respect to the agreements it is party to. It depends on what the facts are with regards to the other breached Notes with third-parties. That evidentiary potential is sufficient to justify discovery under Civil Rule 26(b)(1) into what the facts are. See, *Deutsche Bank Nat'l Trust Co. v. WMC Mortg.*, LLC, 2015 U.S. Dist. LEXIS 49158 (D. Conn. 2014).

We thank the Court for its consideration.

Respectfully Submitted,

By: /s/ Jeffrey Fleischmann

The Court sees no possibility that the documents sought could be admissible as "habit" evidence in light of the nature of the claims in this case and the issues that are actually in dispute.  While evidence need not be admissible to be discoverable, it still must be relevant and the Court does not see the possible relevance of the requested documents.  The documents also have only tangential bearing on the declaration of Steven Roman filed with the Court in April 2019, the pertinent paragraphs of which do not encompass any issue that will be addressed at trial.  To the extent the documents are sought to impeach Roman's assertions at his deposition as to his memory, or that the documents might be relevant to any other issue in this case, we find their production would not be proportional to the needs of this case under Fed. R. Civ. P. 26 (b)(1).  The application is denied.

So Ordered.

GABRIEL W. GORENSTEIN
United States Magistrate Judge
January 11, 2022