UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
EMA FINANCIAL, LLC,

                                        :          OPINION and ORDER

              Plaintiff,

                                          :          19 Civ. 1545 (GWG)

     -v.-

                                          :

VYSTAR CORP.,                          :

             Defendant.          :
-------------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

EMA Financial, LLC ("EMA") brought this suit against Vystar Corp. ("Vystar") for breach of contract relating to a Note and securities purchase agreement. See EMA Fin., LLC v. Vystar Corp., 704 F. Supp. 3d 385, 389 (S.D.N.Y. 2023). The Court granted Vystar's motion for summary judgment,, see id., and adhered to that decision on reconsideration, EMA Fin., LLC v. Vystar Corp., 2024 WL 6082721 (May 16, 2021 S.D.N.Y.). The Second Circuit affirmed the judgment in favor of Vystar. See EMA Fin., LLC v. Vystar Corp., 2025 WL 1975906, at *4 (2d Cir. July 17, 2025).

Vystar had previously moved for attorneys' fees and costs, and that application is now before the Court, as Vystar does not seek any further fees and costs..[1]

---

[1] See Notice of Motion, filed Dec. 8, 2023 (Docket # 253) ("Mot."); Vystar's Application for Attorneys' Fees, Expert Fees, and Costs, filed Dec. 8, 2023 (Docket # 254) ("Mem."); Declaration of Barry M. Bordetsky, filed Dec. 8, 2023 (Docket # 256) ("Bordetsky Decl."); Declaration of Daniel Roche, filed Dec. 8, 2023 (Docket # 257) ("Roche Decl."); Declaration of Michael A. Refolo, filed Dec. 8, 2023 (Docket # 258) ("Refolo Decl."); Declaration of Jeffrey Fleischmann, filed Jan. 19, 2024 (Docket # 265) ("Fleischmann Decl."); EMA's Memorandum of Law in Opposition, filed Jan. 19, 2024 (Docket # 266) ("Opp."); Reply Declaration of Barry M. Bordetsky, filed Mar. 8, 2024 (Docket # 273) ("Bordetsky Reply Decl."); Supplemental Declaration of Michael A. Refolo, filed Mar. 8, 2024 (Docket # 274) ("Refolo Reply Decl."); Vystar's Memorandum of Law in Further Support, filed Mar. 8, 2024 (Docket # 275) ("Reply").

For the reasons that follow, Vystar is awarded attorneys' fees and costs in the amount of $497,439.58.

I.  BACKGROUND

EMA filed this action on February 19, 2019.  See Complaint, filed Feb. 19, 2019 (Docket # 1) ("Compl.").  The complaint alleged that Vystar had failed to fully pay off a financial Note underpinning its loan to Vystar of $80,000.  See id. ¶¶ 1, 13.  The Note allowed EMA to obtain repayment by converting all or part of payments due on the Note into shares of Vystar common stock.  See id. ¶¶ 14-16.

At the outset, EMA moved for a preliminary injunction, which was denied on March 15, 2019.  See Order, filed Mar. 15, 2019 (Docket # 30).  Vystar filed a motion to dismiss certain claims, which was partially granted.  See EMA Fin., LLC v. Vystar Corp., 2020 WL 1233608, at *1 (S.D.N.Y. Mar. 13, 2020).  Vystar then counterclaimed for breach of contract, unjust enrichment, and a declaratory judgment that the loan agreement at issue was unconscionable and unenforceable.  See Amended Answer, Affirmative Defenses and Counterclaims, filed Apr. 16, 2020 (Docket # 60) ("AAC").

In June 2020, EMA sought summary judgment on its claims and dismissal of all of Vystar's counterclaims.  See Notice of Motion, filed June 10, 2020 (Docket # 75).  Additionally, EMA moved to stay discovery pending resolution of these motions.  See Notice of Motion, filed June 11, 2020 (Docket # 81).  On August 19, 2020, EMA's motion to stay discovery was granted.  See EMA Fin., LLC v. Vystar Corp., 336 F.R.D. 75, 84 (S.D.N.Y. 2020).  On March 29, 2021, the Court denied EMA's motion for summary judgment but partially granted its motion

_____

While Vystar presumably incurred fees after its application was filed, it has elected not to seek fees incurred after that date.  See Letter from Barry M. Bordetsky, dated Aug. 7, 2025 (Docket # 293).

2

to dismiss as to one of Vystar's counterclaims and a corresponding affirmative defense. See EMA Fin., LLC v. Vystar Corp., 2021 WL 1177801, at *7 (S.D.N.Y. Mar. 29, 2021). Vystar moved for reconsideration of that ruling, and its motion was denied. See EMA Fin., LLC v. Vystar Corp., 2021 WL 5998411, at *5 (S.D.N.Y. Dec. 20, 2021).

After discovery concluded, both parties moved for summary judgment. See Notices of Motion, filed May 24, 2022 (Docket ## 191, 194). The Court made several rulings at oral argument on the motions and ordered supplemental briefing on how those rulings impacted the remaining issues in the case. See Memorandum Endorsement, filed Jan. 23, 2023 (Docket # 234). On October 27, 2023, after supplemental briefing was submitted, the Court held oral argument again. See Transcript, filed Nov. 7, 2023 (Docket # 249). Shortly thereafter, the Court issued its decision denying EMA's motion for summary judgment and granting Vystar's motion for summary judgment dismissing the complaint. As noted, the dismissal was ultimately affirmed on appeal.

## II.  DISCUSSION

Vystar requests an award of $638,771.75 in attorneys' fees and costs. See Mem. at 9. The request consists of $555,673.75 in legal fees and costs associated with work done by the Law Offices of Barry M. Bordetsky ("Bordetsky Law"), $24,814.50 in legal fees and costs associated with the work done by Mirick O'Connell DeMallie & Lounge LLP ("Mirick O'Connell"), and $58,283.50 in "expert" fees associated with financial valuation work done by Marcum LLP. See Bordetsky Decl. ¶¶ 33-35.

We begin by addressing EMA's arguments that Vystar is not entitled to any award because it was not a prevailing party and that the fees associated with the work performed by Marcum LLP should not be compensated. See Opp. at 14-15, 25-26. We then address Vystar's

claim for attorneys' fees and costs.

A.  Prevailing Party

EMA argues that Vystar "should not be awarded fees at all and certainly not for the vast majority of the litigation" given that it "did not prevail on most of its claims/defenses."  Opp. at 25 (capitalization omitted).

Vystar's entitlement to fees and costs associated with the litigation arises from a provision in the Note stating that for "[a]ny action brought by either party against the other concerning the transactions contemplated by" the Note, "[t]he prevailing party shall be entitled to recover from the other party its reasonable attorney's fees and costs."  Note, annexed as Ex. 3 to Declaration of Steven Rotman, filed May 24, 2022 (Docket # 193-3) ("Note"), § 4.6.  This contract is governed by Delaware law.  See id.

Under Delaware law, "[w]here contract provisions contain language requiring one party to 'prevail' to recover attorneys' fees, the Court must permit their recovery after determining the provision's intent."  Duncan v. STTCPL, LLC, 2020 WL 829374, at *15 (Del. Super. Ct. Feb. 19, 2020) (citing Mrs. Fields Brand, Inc. v. Interbake Foods LLC, 2018 WL 300454, at *2 (Del. Ch. Jan. 5, 2018)).  As the Delaware Supreme Court has explained:

> "Prevailing party" is a term of art that the parties bargained for in the contracts. "Having chosen the common term 'prevailing party,' the parties can be presumed to have intended that that term would be applied by the court as it has traditionally done so."  "That traditional application is an all-or-nothing approach involving an inquiry into which party predominated in the litigation[,]" as opposed to a claim-by-claim or other partial basis approach.

Bako Pathology LP v. Bakotic, 288 A.3d 252, 281 (Del. 2022) (internal citations omitted) (alteration in original); see Choupak v. Rivkin, 2015 WL 1589610, at *20 (Del. Ch. Apr. 6, 2015) ("Absent any qualifying language that fees are to be awarded claim-by-claim or on some other partial basis, a contractual provision entitling the prevailing party to fees will usually be

4

applied in an all-or-nothing manner.") (citation and internal quotation marks omitted), aff'd, 129 A.3d 232 (Del. 2015).  To determine which party predominated in the litigation, a court must consider whether the party seeking fees and costs "prevail[ed] on the case's chief issue." Duncan, 2020 WL 829374, at *15; see 2009 Caiola Fam. Tr. v. PWA, LLC, 2015 WL 6007596, at *33 (Del. Ch. Oct. 14, 2015) ("To achieve predominance, a litigant should prevail on the case's 'chief issue.'"); accord Malkani v. Cunningham, 2024 WL 807401, at *5 (Del. Ch. Feb. 27, 2024), aff'd, 341 A.3d 507 (Del. 2025); In re Navidea Biopharmaceuticals Litig., 2025 WL 1221014, at *7 (S.D.N.Y. Apr. 24, 2025) (applying Delaware law).

The Court finds that the "chief issue" in the case was whether Vystar owed anything to EMA under the loan documents (the Note and securities purchase agreement).  EMA's complaint alleged that Vystar breached the parties' agreement by failing to fully satisfy the Note and claimed that Vystar's breach resulted "in excess of $4,226,187" in damages.  Compl. at 13.[2]

More specifically, the "chief issue" in the case was whether EMA was entitled to damages associated with Vystar's alleged breach of contract, which stemmed from its alleged failure to fully pay off the Note by honoring two conversion notices submitted by EMA.  See Compl. ¶ 1 ("Vystar Corp., ("Vystar") breached the agreement, in numerous ways, including, inter alia, by: (i) failing to honor EMA's notices of conversion . . . .).  Ultimately, after extensive briefing, the Court found that Vystar owed EMA nothing, concluding that Vystar was not required to honor the final two conversion notices and that it had fully paid off the Note prior to EMA initiating this action.  EMA Fin., LLC, 704 F. Supp. 3d at 402.  While in its efforts to achieve this result, Vystar made many arguments that the Court found unpersuasive, it ultimately

---

[2] Vystar later seemingly reduced its claim to $1,013,680.76.  See Declaration of Felicia Preston, filed May 24, 2022 (Docket # 200), ¶ 52.

prevailed on the "chief issue" in this case: whether EMA could collect more than $4 million dollars on an $80,000 Note.

EMA argues that Vystar should not be awarded fees and costs, or should only be awarded a reduced amount of fees and costs, because it did not prevail on all its affirmative defenses and counterclaims. See Opp. at 25. This argument ignores Delaware case law that governs the construction of the fee-shifting provision in the Note. As one case held, "[a]bsent language in [the fee shifting] provision permitting a claim-by-claim analysis, a predominance in the litigation analysis is appropriate. It must be all or nothing." Duncan, 2020 WL 829374, at *16 (emphasis added). Here, the fee-shifting provision makes no mention of a claim-by-claim analysis. Thus, we must decide whether it was EMA or Vystar who prevailed on the "predominant" issue in the case. As to that point, there is no question that the predominant issue was whether Vystar was going to have to pay EMA the more than $4,226,187 EMA was initially seeking for Vystar's refusal to convert the stock that EMA was demanding. While Vystar interposed multiple defenses and counterclaims that were not successful, they were all tethered to its efforts to counter EMA's unrelenting demand for a seven-figure judgment on its $80,000 loan. At no time prior to this litigation had Vystar ever sought to recover anything from EMA. Instead, the first time Vystar made any demand of EMA was after EMA had filed suit. Even there, Vystar's counterclaim sought return of shares that it alleged EMA was not entitled to, but did not specify a damages amount. See AAC ¶¶ 219, 222, 230-31. Vystar only raised this counterclaim as part of its efforts to avoid the multi-million-dollar judgment EMA was seeking. See Vystar's Motion for Summary Judgment, filed May 24, 2022 (Docket # 199), at 2. Vystar's position throughout this case has been that it had sent a final wire of funds to EMA that covered the dollar amount EMA was allegedly due under the Note and thus that "no monies were due under the Note or

6

SPA [securities purchase agreement]."  Declaration of Steven Rotman, filed May 24, 2022 (Docket # 193), ¶ 55.  In the end, Vystar's position was vindicated.  See EMA Fin., LLC, 704 F. Supp. 3d at 402.

The cases cited by EMA to support its contention that Vystar did not prevail do not change this result.  Duncan v. STTCPL, LLC, 2020 WL 829374 (Del. Super. Ct. Feb. 19, 2020), involved a situation where there were two "chief issues" — one involving a claim for environmental contamination and the other involving an indemnification claim.  See id. at 16.  No fees were awarded because, as Duncan put it, the plaintiff and the defendant "each won and lost a chief issue in this case" such that "there can be no finding that either predominated in the litigation so as to be the 'prevailing party.'"  Id.  Here, unlike Duncan, there was only one "chief issue."  In Vianix Del. LLC v. Nuance Commc'ns, Inc., 2010 WL 3221898 (Del. Ch. Aug. 13, 2010), the court considered which party won the "plurality" of issues but also who bore the "greater degree of responsibility . . . for the substantial cost in time and money of this litigation." Id. at *28.  Here, however, we identify only one "chief issue": whether EMA could collect millions of dollars in damages for breach of the Note because EMA had improperly failed to honor certain conversion notices.  Notwithstanding losing on various affirmative defenses and counterclaims, Vystar prevailed completely on this question.

In sum, because the summary judgment decision rejected EMA's position in full and prevented EMA from collecting anything on the Note, we find that Vystar is the "clear-cut prevailing party," Vianix Delaware LLC, 2010 WL 3221898, at *28, and thus entitled to an award calculated "in an all-or-nothing manner," Choupak, 2015 WL 1589610, at *20 (citation and internal quotation marks omitted).

7

B.  Marcum LLP Fees

EMA argues that Vystar is not entitled to recover the $58,283.50 it paid to Marcum LLP because the Note's fee-shifting provision does not provide for an award of "expert fees."  See Opp. at 14-15.  Vystar "retained [Marcum LLP] for the purposes of conducting an analysis of, among other things, conversions that took place, the conversions that should have taken place based upon the terms of the underlying Note, and various damages analysis [sic]."  Bordetsky Decl. ¶ 9.  Over the course of the litigation, a partner at Marcum LLP, Daniel Roche, provided several declarations and associated analyses regarding the Note's structure and cashflow.  See Declaration of Daniel Roche, filed May 24, 2022 (Docket # 195); Declaration of Daniel Roche, filed June 29, 2022 (Docket # 213); Declaration of Daniel Roche, filed Feb. 24, 2023 (Docket # 240).

The Court has no doubt that Roche's work was important to Vystar's efforts to present its case and that the information it provided was helpful in adjudicating the summary judgment motion.  But the question before the Court is what the parties intended through the Note's provision entitling the prevailing party in a lawsuit to "its reasonable attorney's fees and costs."  Note § 4.6.  The parties have not pointed to any decision of a court in Delaware as to the meaning of these terms.  Our own research reflects that Delaware law would not permit recovery of Roche's fees.  We begin by addressing whether such fees are included in the term "costs."

In Comrie v. Enterasys Networks, Inc., 2004 WL 936505 (Del. Ch. Apr. 27, 2004), the court addressed the meaning of the word "costs" in a contractual fee-shifting provision entitling a prevailing party to "its costs, including reasonable attorneys' fees."  Id. at *1.  The court ruled,

> Because the Agreement is a heavily negotiated contract between sophisticated persons who were represented by counsel, it is reasonable to assume that the parties and/or their attorneys were aware of the detailed and long-established usage of the word "costs[]." The language of [the fee-shifting provision] can be seen to validate

8

this assumption. By adding the statement "including reasonable attorneys' fees," the parties indicated their knowledge that the ordinary legal usage of the term "costs" is limited and would not include attorneys' fees. Moreover, [the fee-shifting provision] does not contain a broad term such as "all" (as in "all costs") or the legally recognized broader term "expenses." Those terms are present in cases relied upon by the plaintiffs. Not only does this differentiate those cases from the present case, it indicates a general awareness among the parties and their attorneys that the definition of "costs" is, through well-developed jurisprudence, a limited one.

For these reasons, the court construes the term "costs" in [the fee-shifting provision] consistently with the jurisprudence under [Court of Chancery] Rule 54(d).

Id. at *4-5 (internal citation omitted).  Court of Chancery Rule 54(d) provides that "costs shall be allowed as of course to the prevailing party unless the Court otherwise directs."  Del. Ch. Ct. R. 54(d).  By statute, these "costs" include "fees for witnesses testifying as experts or in the capacity of professionals," i.e., "a trial expert's actual testimonial time, waiting time, and certain travel time."  Comrie, 2004 WL 936505, at *5 (first quoting 10 Del. C. § 8906).  They do not include "fees incurred in connection with the experts' time spent (1) consulting with or advising a party's attorney; (2) preparing for testimony in court; and (3) preparing for and providing deposition testimony."  Id. (citations omitted).  Thus, the court determined that the word "costs" in the fee-shifting provision at issue did not permit recovery of expert fees except those incurred for "actual testimonial time, waiting time, and certain travel time."  Id.

In Banas v. Volcano Corp., 47 F. Supp. 3d 957 (N.D. Cal. 2014), the court applied Delaware law to a contractual fee-shifting provision providing for recovery of "attorneys' fees, costs and disbursements."  Id. at 976.  The court reasoned that "[b]y providing for recovery of reasonable 'disbursements,' in addition to [attorneys' fees] and 'costs,' the parties intended to allow recovery of reasonable expenses," id. at 977, including "expert services" involving "an analysis of merger and acquisition agreements in the life sciences sector," id. 978-79.

9

Here, the Note provides for recovery of "reasonable attorney's fees and costs."  Note § 4.6.  This provision is functionally similar the provision in <u>Comrie</u>, which held that the term "costs" excluded expert fees except those incurred for "actual testimonial time, waiting time, and certain travel time."  <u>Comrie</u>, 2004 WL 936505, at *5.  Further, unlike the provision in <u>Banas</u>, which was held to include such fees, the Note does not provide for recovery of "disbursements" or "expenses."  Accordingly, Vystar may not recover the fees charged by Roche, who never testified at a trial, as "costs."

We next consider whether "attorney's fees" as used in the Note might allow Vystar to recover this expense.  Vystar points to a Third Circuit decision holding that an award of "attorney's fees" can include the fees of experts who have "assisted the attorneys in preparing their ultimate work product," <u>Interfaith Cmty. Org. v. Honeywell Intern., Inc.</u>, 426 F.3d 694, 716 (3d Cir. 2005) — a holding reliant on the Supreme Court's decision in <u>Missouri v. Jenkins ex rel. Agyei</u>, 491 U.S. 274 (1989) that "a 'reasonable attorney's fee' . . . must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product."  But EMA correctly notes, Opp. at 15, that the Supreme Court observed in a later case, <u>Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy</u>, 548 U.S. 291, 303 (2006), that "the term 'attorneys' fees,' standing alone, is generally not understood as encompassing expert fees."  <u>See</u> <u>also</u> <u>W. Virginia Univ. Hosps., Inc. v. Casey</u>, 499 U.S. 83, (1991) ("[T]he means of analysis employed in <u>Jenkins</u> would lead to the conclusion that[,] since [expert] fees have not traditionally been included within the attorney's hourly rate[,] they are not attorney's fees.").  Vystar does not address <u>Arlington</u> in its reply brief.

We recognize that the cases just cited involve federal statutes, not contracts governed by Delaware law, and are thus of limited relevance.  In the end, they point to a lack of clarity as to

what is included in the concept of "attorney's fees."  The lack of clarity is, in effect, settled by another principle.  Because Delaware adheres to the so-called American rule that parties generally must bear their own litigation expenses, see, e.g., Honaker v. Farmers Mut. Ins. Co., 313 A.2d 900, 904 (Del. Super. Ct. 1973), "[p]arties should not expect the Court to deviate from the American rule if care has not been taken in drafting a contract's language."  Baltimore Pile Driving & Marine Constr., Inc. v. Wu & Assocs., Inc., 2022 WL 3466066, at *1 (Del. Super. Ct. Aug. 18, 2022) (citation and internal quotation marks omitted); see also Am. Inst. for Chartered Prop. Cas. Underwriters v. Potter, 2024 WL 3649573, at *6 (3d Cir. Aug. 5, 2024) ("In Delaware, parties to litigation are generally responsible for their own fees unless the contract contains a fee-shifting provision that is clear and unequivocal.") (citation and internal quotation marks omitted).  Here, whether fees of a consulting expert are included in the term "attorney's fees" is not clear and thus Vystar has not shown that the contract is "clear and unequivocal" in directing that such expert fees are included. Id.  Thus, Vystar may not recover the $58,283.50 it paid to Marcum LLP.

   C. <u>Fees Sought by Defendant's Attorneys</u>

   In Delaware "a judge determine[s] whether the fees requested are reasonable" in "contract litigation that involves a fee shifting provision."  Mahani v. Edix Media Grp., Inc., 935 A.2d 242, 245 (Del. 2007); accord Washington House Condo. Ass'n of Owners v. Daystar Sills, Inc., 2018 WL 6046714, at *4 (Del. Super. Ct. Nov. 13, 2018).  The parties provide little analysis of how courts applying Delaware law determine "reasonableness" and primarily cite to the law applied by federal courts in New York — that is, the approach articulated in Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182 (2d Cir. 2008).  See Mem. at 6; Opp. at 22-23.  To assess reasonableness under Delaware law, "case law directs a

11

judge to consider the factors set forth in the Delaware Lawyers' Rules of Professional Conduct,"
which include:

> (1) the time and labor required, the novelty and difficulty of the questions
> involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular
> employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the
> services; and
> (8) whether the fee is fixed or contingent.

Mahani, 935 A.2d at 245-46 (citations omitted); see TransPerfect Glob., Inc. v. Pincus, 278 A.3d

630, 653 (Del. 2022); Vogel v. Boris, 2024 WL 1884479, at *3 (S.D.N.Y. Apr. 30, 2024)

(applying Delaware law).  These "non-exhaustive" factors, TransPerfect Glob., Inc., 278 A.3d at

653, resemble the "Johnson factors," enumerated in Johnson v. Ga. Highway Express, Inc., 488

F.2d 714, 717-19 (5th Cir. 1974), which the Second Circuit instructs courts to consider in

determining the reasonableness of a fee award, see Arbor Hill, 522 F.3d at 186 n.3 (citing

Johnson, 488 F.2d at 717-19).  Furthermore, Delaware courts similarly consider the number of

hours expended and the hourly rate charged separately, as is true under Arbor Hill.  See, e.g.,

Gerlofs v. Citizens Bank, N.A., 2024 WL 1855354, at *8 (Del. Super. Ct. Apr. 29, 2024) ("There

are two components of this inquiry: (1) whether the number of hours is reasonable; and (2)

whether the hourly rate is reasonable."); C&D Contractors, Inc. v. McLaughlin, 2023 WL

1527396, at *2-3 (Del. Super. Ct. Feb. 3, 2023) (looking at the hourly rate billed and the number

of hours worked).  Thus, we begin by analyzing the appropriateness of Vystar's attorneys'

requested rates and then consider the number of hours expended.

    1.   Reasonable Hourly Rate

12

In determining the reasonable hourly rate, the court considers the factors enumerated Delaware Lawyers' Rules of Professional Conduct, including "the fee customarily charged in the locality for similar legal services."  Delaware Lawyers' Rule of Professional Conduct 1.5(a). Here, the relevant locality is the Southern District of New York.

Vystar requests attorneys' fees for worked performed by two law firms: Bordetsky Law and Mirick O'Connell.  See Mem. at 7-8.  The hourly rates for each individual increased over the course of the litigation and are as follows:

| Name | Law Firm / Role | Hourly Rates Sought |
|------|-----------------|---------------------|
| Barry M. Bordetsky | Bordetsky Law / Attorney | $500-$550 |
| Dahlia Burns | Bordetsky Law / Paralegal | $200-$250 |
| Michael Refolo | Mirick O'Connell / Attorney | $485-$530 |

See Time Records, annexed as Ex. 2 to Bordetsky Decl., filed Dec. 8, 2023 (Docket # 256-2) ("Bordetsky Billing"); Refolo Decl. at 4-5.

Bordetsky's declaration indicates that he graduated from Brooklyn Law School in 1997 and was admitted to the bar in 1998.  Bordetsky Decl. ¶ 4.  Bordetsky states that he is "a commercial litigator practicing since admission in 1998," Mem. at 4, suggesting he is an experienced litigator.  In regard to customary rates, "the rate awarded to partners in breach of contract suits has recently ranged from $350 to $650."  Byline Bank v. SDS Dining Corp., 2024 WL 1422812, at *7 (S.D.N.Y. Apr. 3, 2024), adopted by, 2024 WL 5716765 (S.D.N.Y. Apr. 18, 2024).  However, "rates for experienced attorneys in small firms generally range from $250 to $450 in civil cases."  Hindman LLC v. Mihaly, 2022 WL 19752, at *3 (S.D.N.Y. Jan. 3, 2022) (citations omitted); see In re Navidea Biophamaceuticals Litig., 2021 WL 2323380, at *11 (S.D.N.Y. Apr. 21, 2021) ("[B]ase rates of $450 and $400 per hour are in line with the rates that have recently been approved in this District for attorneys in solo practice, with similar years of experience in general civil litigation."), adopted by, 2021 WL 2156276 (S.D.N.Y. May 27,

13

2021); see also Crowhurst v. Szczucki, 2019 WL 6122645, at *11 (S.D.N.Y. Nov. 19, 2019) ("A rate may be reduced further for attorneys in small firms because they have fewer overhead costs."), adopted by, 2020 WL 133509 (S.D.N.Y. Jan. 11, 2020).  While Bordetsky provides little information about Bordetsky Law, it appears to be either a solo practice or a small firm, given that Bordetsky is the only attorney who performed work on this matter.  Thus, we will use the range of rates applicable to small firms.  Considering Bordetsky's approximately 25 years of practicing law coupled with the complex nature of this case, we find that he is entitled to a fee in the upper range of awards, and increased somewhat above the range to account for inflation. Thus, we will award $500 per hour for the duration of the litigation.  See Precise Leads, Inc. v. Nat'l Brokers of Am., Inc., 2020 WL 736918, at *7 (S.D.N.Y. Jan. 21, 2020) ("The court may adjust base hourly rates to account for case specific variables such as the complexity of the issues and attorneys' experiences."), adopted as modified by, 2020 WL 729764 (S.D.N.Y. Feb. 13, 2020).

Burns, Bordetsky's paralegal, worked with Bordetsky for over 12 years.  Bordetsky Decl. ¶ 7.  Burns became a paralegal in 1999 at another law firm, where she became "a case manager for a three-billion-dollar class action case involving approximately 40 attorneys and approximately 25 paralegals."  Id.  "[I]n regard to individuals performing administrative and paralegal support services, courts in this district award rates between $75 to $200, depending on the individual's experience."  Byline Bank, 2024 WL 1422812, at *7; see 1979 Fam. Tr. Licensor, LLC v. Darji, 2020 WL 9596279, at *1 (S.D.N.Y. Sept. 30, 2020) ("Courts in this district typically approve paralegal hourly rates between $150 and $200.").  The information provided on Burns suggests she should receive the upper end of this range of rates, given her extensive experience.  Accordingly, the Court finds a rate of $200 per hour is reasonable.  See

14

K2M Design, Inc. v. Schmidt, 2023 WL 10674525, at *12 (S.D.N.Y. Nov. 30, 2023) (awarding

paralegal rates between $150/hour and $200/hour), adopted by, 2024 WL 1208910 (S.D.N.Y.

Mar. 21, 2024); Sire Spirits, LLC v. Green, 2022 WL 16578960, at *2 (S.D.N.Y. Nov. 1, 2022)

(awarding $200/hour to paralegal with over 10 years of experience); Sprint Commc'ns Co. L.P.

v. Chong, 2014 WL 6611484, at *8 (S.D.N.Y. Nov. 21, 2014) (awarding paralegal rates between

$180/hour and $205/hour).

Finally, Refolo is "a partner at the law firm Mirick O'Connell" and "outside general

counsel" for Vystar.  Refolo Decl. ¶ 1.  Refolo is not a litigator, see Refolo Reply Decl. ¶ 2, but

has practiced law for over three decades and is admitted in Massachusetts, see Refolo Decl. ¶ 3.

In addition to his practice, Refolo is an adjunct professor at Boston University School of Law,

where he "teaches secured transactions and Article 9 of the Uniform Commercial Code."  Refolo

Reply Decl. ¶ 2.  In this matter, Refolo "provided guidance to" to Vystar's "NY counsel,"

"including providing technical advice related to promissory notes, securities law, restricted stock,

and transfer agent procedures," and "reviewed and advised NY counsel's draft motions and

memoranda."  Id. ¶ 3.  Refolo requests an hourly rate of $485 to $530.  See Refolo Decl. at 4-5.

In light of Refolo's experience, status as a law firm partner, and expertise in several of the

subject areas implicated in this case, we find that an hourly rate of $485 per hour is appropriate

for Refolo.

EMA asserts that the rates charged are excessive when compared to EMA's counsel's

own rate of $375.  See Opp. at 17.  But "as Delaware courts have observed, any attempt to

measure reasonableness by simple comparison of the opposing parties' lawyers' bills is

inadequate."  Bellmoff v. Integra Servs. Techs., Inc., 2018 WL 3097215, at *3 (Del. Super. Ct.

June 22, 2018).

15

Accordingly, Vystar is awarded the following hourly rates:

| Name | Law Firm / Role | Hourly Rate |
|---|---|---|
| Barry M. Bordetsky | Bordetsky Law / Attorney | $500.00 |
| Dahlia Burns | Bordetsky Law / Paralegal | $200.00 |
| Michael Refolo | Mirick O'Connell / Attorney | $485.00 |

2.  Reasonable Number of Hours Expended

In determining the reasonable number of hours expended, Delaware courts consider, inter alia, "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly." Mahani, 935 A.2d at 246; accord Vogel, 2024 WL 1884479, at *4.

Vystar requests the following hours:

| Name | Law Firm / Role | Hours |
|---|---|---|
| Barry M. Bordetsky | Bordetsky Law / Attorney | 873.16 |
| Dahlia Burns | Bordetsky Law / Paralegal | 449.50 |
| Michael Refolo | Mirick O'Connell / Attorney | 51 |
| TOTAL | | 1,373.66 |

See Bordetsky Billing; Bordetsky Decl. ¶ 33; Refolo Decl. at 4-5.

Before considering the overall reasonableness of the hours expended, we address several arguments EMA makes related to Bordetsky Law's billing practices. In particular, EMA argues that Bordetsky Law's time records reflect impermissible block billing and use quarter-hour increments, thereby resulting in overbilling. See Opp. at 20-23.[3]

_____

[3] EMA also argues that this block billing suggests that Bordetsky Law's time records were not contemporaneously kept. See Opp. at 22. In his declaration, Bordetsky indicates that the time record entries "were contemporaneously inputted into the billing system at or close to the time when the work was done." Bordetsky Decl. ¶ 3. Because Bordetsky has sworn to the fact that the records were contemporaneously kept, and because the records themselves do not raise doubt as to their true nature, we accept Bordetsky's affirmation. See Chen v. Hunan Manor Enter., Inc., 2024 WL 2140119, at *8 (S.D.N.Y. May 14, 2024) ("None of these observations are sufficient to cause us to make a finding that the records were not contemporaneously made in

As for block billing, EMA correctly notes that block billing is considered problematic in federal court. See Opp. at 21-22 (citing, inter alia, Live Face on Web, LLC v. Rockford Map Gallery, LLC, 2022 WL 11110133, at *3 (D. Del. Oct. 19, 2022); LV v. N.Y.C. Dep't of Educ., 700 F. Supp. 2d 510, 525 (S.D.N.Y. 2010)). However, "Delaware courts do not appear to prohibit the practice." Vogel, 2024 WL 1884479, at *6 (citing Concord Steel, Inc. v. Wilmington Steel Processing Co., 2010 WL 571934, at *3 n.22 (Del. Ch. Feb. 5, 2010), aff'd, 7 A.3d 486 (Del. 2010). Nonetheless, while the practice may not be "impermissible as a matter of law," Delaware courts are mindful of the challenges block billing creates when assessing reasonableness. In re TransPerfect Glob., Inc., 2021 WL 1711797, at *31 (Del. Ch. Apr. 30, 2021), aff'd, 278 A.3d 630 (Del. 2022); see also id. ("The relevant inquiry is whether the use of block billing makes it more difficult for a court to assess the reasonableness of the hours claimed.") (citation, alterations and internal quotation marks omitted). After reviewing Bordetsky Law's billing records, we identify several instances of block billing that "make[] it more difficult for a court to assess the reasonableness of the hours claimed." Id. For example, several entries span multiple days and contain lengthy descriptions of work performed. See, e.g., Bordetsky Billing at 21, 59, 60. The problem with these entries is not that the entries are vague, but that the work described is diverse, and it is therefore impossible to determine how much time was spent on each task. There are several similar entries for ten or more hours that suffer from the same problem. See, e.g., id. at 2, 17, 18, 20, 23. Vystar fails to meaningfully defend this practice and instead accuses EMA's counsel of doing the same practice in other cases. See Reply at 9-10. But how EMA's counsel bills is irrelevant. The Court concludes that, although

_____

light of [plaintiff's counsel's] sworn statement that the records are in fact contemporaneous."), adopted by, 2024 WL 3454751 (S.D.N.Y. July 18, 2024).

Bordetsky Law's billing records generally reflect detailed descriptions of the work performed, thereby mitigating some of the concerns around block billing, a small reduction in the total hours awarded is warranted.

As for the billing increments, EMA points to Local Rule 2016-2(d) of the United States Bankruptcy Court for the District of Delaware, which mandates that billing should be done in one-tenth-of-an-hour increments.  See Opp. at 20, n.2.  Local Rule 2016-2(d), however, does not constitute a rule of decision with respect to Delaware state law, which governs the instant application.  Nonetheless, Bordetsky Law's quarter-hour increments "make[] it more difficult for a court to assess the reasonableness of the hours claimed."  In re TransPerfect Glob., Inc., 2021 WL 1711797, at *31.  The use of quarter-hour increments means that a two-minute task will invariably be billed as if it took 15-minutes.  While EMA offers no citations to cases applying Delaware law, federal courts have found billing by quarter-hour increments "excessive" and have "cut fee requests that employed this practice as a result."  Doe v. Olive Leaves, Inc., 2024 WL 3048373, at *18 (E.D.N.Y. Feb. 16, 2024); see Trs. of Loc. 813 Ins. Tr. Fund v. Bradley Funeral Serv., Inc., 2012 WL 3871759, at *7 (E.D.N.Y. Aug. 10, 2012) ("[P]laintiff's counsel's method of billing tends to overstate the amount of time expended, since the firm divides the billed hours into fifteen-minute increments instead of the preferred six-minute increments."), adopted by, 2012 WL 3871755 (E.D.N.Y. Sept. 4, 2012).  Thus, we find that Bordetsky Law's use of quarter-hour increments warrants a reduction in the total hours awarded.

Turning to the overall reasonableness of the requested hours, neither party performs much analysis of the factors that guide the "reasonableness" inquiry under Delaware law.  See Mahani, 935 A.2d at 245-46.  EMA argues generally that the total number of hours expended is unreasonable.  See Opp. at 24-25.  But the total number of hours expended, 1,373.66, especially

18

with the slight reduction already contemplated, is not per se unreasonable given the "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly" here.  Mahani, 935 A.2d at 246.  This case was actively litigated over many years.  As described above, it involved an application for a preliminary injunction by EMA --- ultimately found to be meritless, multiple rounds of motion practice, supplemental briefings, oral arguments, and discovery.  Importantly, the issues present in this case were far from easy, as they involved a "complex" loan agreement.  See EMA Fin., LLC, 704 F. Supp. 3d at 389.  We also find that "the amount involved and the results obtained," see Mahani, 935 A.2d at 246, weighs in favor of Vystar's requested award, given that EMA's complaint alleged damages in this case exceeding $4 million dollars, see Compl. at 13, and Vystar ultimately ended up owing nothing.  As already discussed, we are not persuaded by EMA's argument that Vystar's failure to prevail on several fronts — primarily, on its counterclaims — warrants a reduction in the hours awarded, for "[a]bsent any qualifying language that fees are to be awarded claim-by-claim . . . a contractual provision entitling the prevailing party to fees will usually be applied in an all-or-nothing manner."  Choupak, 2015 WL 1589610, at *20 (citation and internal quotation marks omitted).

We next address a number of largely cursory arguments EMA makes in support of its contention that Vystar's fee award is unreasonable.

We reject out of hand the argument that the hours expended by EMA's counsel should be a benchmark against those expended by Vystar's attorneys.  As already noted, the inappropriateness of such a comparison applies "particularly in a case that imposed 'asymmetric burdens' on either side," Williams Companies, Inc. v. Energy Transfer LP, 2022 WL 3650176, at *5 (Del. Ch. Aug. 25, 2022), aff'd, 2023 WL 6561767 (Del. Oct. 10, 2023).  Here, unlike

Vystar's attorneys, EMA's counsel has apparently litigated numerous cases on behalf of EMA that involve financial instruments that are substantially similar to the one at issue in this case. See EMA Fin. v. TPT Glob. Tech, Inc., 2023 WL 7043227 (S.D.N.Y. Oct. 26, 2023); Cyber Apps World, Inc. v. EMA Fin., LLC, 645 F. Supp. 3d 281 (S.D.N.Y. 2022); EMA Fin., LLC v. AppTech Corp., 2022 WL 17352437, at *1 (S.D.N.Y. Dec. 1, 2022); Parallax Health Scis., Inc. v. EMA Fin., LLC, 2022 WL 2354546, at *1 (S.D.N.Y. June 30, 2022); EMA Fin., LLC v. Joey N.Y. Inc., 2022 WL 292920, at *1 (S.D.N.Y. Feb. 1, 2022), vacated in part, 80 F.4th 395 (2d Cir. 2023); EMA Fin., LLC v. AIM Expl., Inc., 2019 WL 689237, at *1 (S.D.N.Y. Feb. 19, 2019). EMA's counsel's greater familiarity is a likely explanation for the difference in hours expended, given that this case focused on legal issues and interpretation of loan documents common to many cases previously litigated by EMA's counsel.

As to Bordetsky's hours in particular, EMA points to a series of tasks it asserts were unnecessary. Much of the identified work relates to Bordetsky's review of other cases involving EMA. See Opp. at 8-9. Far from being "irrelevant," as EMA asserts, Opp. at 8, reviewing these cases was appropriate. EMA has been a party to myriad cases involving similar financial instruments as those in this case and similar alleged breaches on the part of the borrower. E.g., Parallax Health Scis., Inc. v. EMA Fin., LLC, 2022 WL 2442338, at *2-3 (S.D.N.Y. June 13, 2022) (analyzing nearly identical contractual language), adopted by, 2022 WL 2354546 (S.D.N.Y. June 30, 2022). Reviewing these cases to see how EMA responded to certain arguments and how the various courts analyzed them was a perceptive shortcut to homing in on the key issues in the case. The fact that EMA prevailed in the other cases, see Opp. at 8-9, is not important: EMA's successes may have altered Vystar's strategy in the instant case.

20

As to the hours billed by Burns, EMA argues that the time she devoted to certain tasks, such as "indexing" documents, was excessive, and that she unnecessarily billed for other tasks, such as attending depositions.  See Opp. at 7, 24.  With respect to the amount of time Burns spent "indexing" documents, Vystar highlights that thousands of documents were produced in this case.  See Reply at 14 ("As to the indexing, Plaintiff produced 868 documents, Vystar produced 3,705 documents, subpoenaed parties such as World Wide Transfer produced 552 documents, Auctus Fund, LLC produced 430 documents[,] and CPG produced 239 documents.").  Given the size of the production, we do not believe the approximately 60 hours identified by EMA for indexing these documents is unwarranted.  Nor do we find a paralegal's attendance at depositions unreasonable in light of the fact that there is no claim that multiple attorneys attended depositions from Vystar's side.  See Casmento v. Volmar Constr., Inc., 2022 WL 17666390, at *6 (S.D.N.Y. Dec. 14, 2022) (noting "it is efficient staffing to have a paralegal rather than a second attorney assist at a deposition").

EMA argues that Refolo's participation was unnecessary and that because Refolo is Vystar's general counsel, Vystar is not entitled to recover fees for Refolo's work.  See Opp. at 19.  But EMA provides no evidence that would permit a finding that Refolo's work was unnecessary or duplicative of Bordetsky's work.  Further, EMA fails to provide any support for the proposition that a party is not entitled to recover attorneys' fees for an outside attorney who performs work in connection with a litigation.  Indeed, case law holds even in-house counsel may be eligible for fees. See IME Watchdog, Inc. v. Gelardi, 2024 WL 4287244, at *4 (E.D.N.Y. Sept. 25, 2024) (where "a company is represented by in-house counsel in litigation, . . . that in-house counsel is eligible for attorneys' fees in the same way that otherwise retained counsel would be"); accord Video-Cinema Films, Inc. v. Cable News Network, Inc., 2004 WL 213032,

at * 6 (S.D.N.Y. Feb. 3, 2004) ("It is well-settled that attorneys' fees and costs should be awarded for litigation performed by in-house counsel if such fees would be awarded for the same work performed by outside counsel.")  This rule is all the more applicable where, as here, Refolo was with an outside firm that was engaged on an hourly basis, meaning that Vystar had to pay for each hour that Refolo spent on the litigation.

We similarly reject EMA's argument, Opp. at 4, that Vystar should not be permitted to recover fees associated with Refolo's work because Refolo and his firm never appeared in this action.  See Chen, 2024 WL 2140119, at *8 (lack of notice of appearance irrelevant to recovery of attorneys' fees).  We also reject the argument that hours billed by Refolo before suit was filed are not compensable, see Opp. at 4, as these hours appear to relate to EMA's threat to file suit, see Refolo Reply Decl. ¶ 2.  Similarly rejected is the argument that there is no proof Vystar paid Refolo's bills.  See Opp. at 5; Refolo Reply Decl. ¶ 4.

Nonetheless, we agree with EMA that Refolo's billing is in many instances vague.  See Opp. at 4; Estrada v. Giovanni's Italian Pizzeria, Inc., 2020 WL 3166964, at *9 (S.D.N.Y. June 15, 2020) ("Such vague entries make it impossible to separate out tasks and to judge the reasonableness of the hours claimed."), adopted by, 2020 WL 4917179 (S.D.N.Y. Aug. 20, 2020).  As EMA points out, Refolo's vague time entries are a problem particularly because, as outside general counsel, he performs work for Vystar in connection with other matters outside this litigation.  See Opp. at 4.  Many entries in Refolo's billing provide little to no information about the work performed.  For example, numerous entries simply state that Refolo had a call with co-counsel or an unspecified group of people "regarding EMA Financial."  E.g., Refolo Decl. at 4-5.  While these entries are vague, we also acknowledge that Delaware law is more forgiving in determining the reasonableness of fees as compared to the approach taken by federal

22

courts.  See Dow Chem. Canada Inc. v. HRD Corp., 2013 WL 3942052, at *1 (D. Del. July 29, 2013) ("In Delaware, the submission of time records is not a strict requirement for the recovery of attorneys' fees.") (citations omitted).

As a result of the above analysis, the Court finds that a 10% reduction in Bordetsky Law and in Refolo's claimed hours is appropriate.  Accordingly, Vystar is awarded the following in attorneys' fees:

| Name | Hours Sought | Hourly Rate Awarded | Hours Awarded | Award Amount |
|---|---|---|---|---|
| Barry M. Bordetsky | 873.16 | $500.00 | 786 | $393,000.00 |
| Dahlia Burns | 449.50 | $200.00 | 405 | $81,000.00 |
| Michael Refolo | 51 | $485.00 | 45 | $21,825.00 |
| TOTAL | | | | $495,825.00 |

D. Costs

Vystar seeks $1,614.58 in costs.  See Bordetsky Billing at 69-71.  EMA's objects to the PACER fees incurred by Vystar on the ground that they pertain to Vystar searching other cases filed by EMA.  See Opp. at 10-11.  EMA also asserts that the costs Vystar seeks for parking fees and copying are excessive.  See id. at 11.  Notably, Vystar does not contest that reasonable expenditures of these kinds are not compensable as costs.

As to the claims of excessiveness, we have examined all the charges and find them to be reasonable.  As to the PACER fees specifically, it was quite reasonable for Vystar to look into other efforts made by EMA to collect on loan agreements, given the similarity of the provisions in those agreements to the one that governed in this matter.

\*        \*        \*

In sum, Vystar is entitled to $495,825.00 in fees for attorney's fees and $1,614.58 in costs.

Conclusion

23

For the foregoing reasons, the motion for attorneys' fees and costs (Docket # 254) is granted.  The Clerk is directed to enter judgment against plaintiff EMA Financial, LLC in favor of defendant Vystar Corp., in the amount of $497,439.58.

Dated: December 22, 2025
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge